RANDOLPH, Justice,
for the Court:
¶ 1. The Mississippi Commission on Judicial Performance (“Commission”) filed a “Formal Complaint” charging Leigh Ann Darby, Youth Court Judge, Tate County, Mississippi, with violating various Canons of the Mississippi Code of Judicial Conduct and with “willful misconduct in office” and “conduct prejudicial to the administration of justice which brings the judicial office into disrepute[,]” actionable pursuant to Article 6, Section 177A of the Mississippi Constitution. Miss. Const, art. 6, § 177A. Ultimately, the Commission and Judge Darby filed an “Agreed Statement of Facts and Proposed Recommendation” which provided that Judge Darby had violated Canons 1, 2A, and 3B(2) of the Code of Judicial Conduct and had engaged in conduct actionable pursuant to Section 177A of the Mississippi Constitution, and *1039 recommended that she be publicly reprimanded, fined $500, and assessed costs of $100. The Commission unanimously agreed to “accept and adopt” that “Agreed Statement of Facts and Proposed Recommendation.” This Court now conducts its “mandated review of the Commission’s recommendation consistent with Miss. Const, art. 6, § 177A, Miss. Comm’n on Jud. Perf. R. 10, M.R.A.P. 16(a), and our case law.” Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 210 (Miss.2006).
FACTS[1]
¶ 2. On August 13, 2009, T.J., the fifteen-year-old daughter of A.L.J. (“mother”), was arrested and charged with disturbing the peace. On August 14, 2009, following a detention hearing in the Youth Court of Tate County, Judge Darby issued a “Detention Order” which provided, inter alia, that T.J. was to be placed on “strict house arrest.” Thereafter, a formal petition was filed, and an adjudication hearing was conducted. During that hearing, issues regarding T.J.’s mental health were raised, her need for counseling and treatment was discussed, and Judge Darby learned that T.J. did not have medical insurance coverage. Judge Darby then verbally directed the mother to apply for Medicaid benefits on behalf of T.J.
¶ 3. On June 7, 2010, following a subsequent arrest of T.J., Judge Darby conducted another detention hearing. During that hearing, Judge Darby learned that T.J. still did not have medical insurance coverage, despite the fact that the mother’s employer offered health-care coverage.[2] Judge Darby then “chastised” the mother for failing to have T.J. insured, verbally directed the mother to file for Medicaid, and verbally directed the mother to take T.J. to Parkwood Behavioral Health Systems (“Parkwood”) in Olive Branch, Mississippi, for evaluation and assessment.
¶ 4. On June 8, 2010, based solely upon Judge Darby’s verbal directions,[3] the mother took T.J. to Parkwood for evaluation and assessment. While the Parkwood staff determined that T.J. would benefit from inpatient treatment, such treatment was not commenced, because T.J. was not insured. Thereafter, the mother applied for Medicaid on T.J.’s behalf, but was denied because she did not meet eligibility requirements. However, T.J. was approved for coverage under the Mississippi Children’s Health Insurance Program (“CHIP”).
¶ 5. On June 14, 2010, Judge Darby conducted a review hearing and learned that T.J. had been approved for CHIP coverage. Based thereon, Judge Darby verbally ordered the mother to schedule an appointment for T.J. at Communicare, a regional mental health-care facility, and to take T.J. back to Parkwood for a second evaluation and assessment.
¶ 6. On July 6, 2010, based solely upon *1040 Judge Darby’s verbal directions,[4] the mother took T.J. to Communicare. On the morning of July 16, 2010, based solely upon Judge Darby’s verbal directions, the mother took T.J. to Parkwood for her second evaluation and assessment. There, the Parkwood staff informed the mother that CHIP would provide coverage for only a ten- to fifteen-day course of daily outpatient treatment from 8:00 a.m. until 3:00 p.m. The Parkwood staff further advised the mother that she would be required to sign a guaranty agreement, taking personal responsibility for any charges that CHIP refused to pay. Due to the transportation costs associated with the sixty-seven-mile round-trip commute from the mother’s home to Parkwood, and the adverse impact of that daily commute upon her employment, the mother concluded that it would not be financially possible for T.J. to participate in the Parkwood outpatient treatment program. The mother then called the Tate County Youth Services Counselor (“counselor”) and expressed these concerns. The counselor contacted Judge Darby and, following their conversation, informed the mother that if she refused to leave T.J. at Park-wood, then she would be held in contempt by Judge Darby and could be jailed. Despite that warning, T.J. and her mother left Parkwood that morning.
¶ 7. At 11:30 a.m., the counselor called the mother and instructed her to be in Judge Darby’s court for a 2:00 p.m. hearing. It is undisputed that (1) no pleadings had been filed which alleged that the mother was in contempt of court, (2) the mother was not provided written notice of the hearing, (3) the mother was not given a reasonable amount of time to prepare for the hearing, and (4) the mother was not afforded the opportunity to obtain counsel. At the conclusion of the hearing, of which there is no record, the mother was found in contempt of court for failing to admit T.J. for treatment at Parkwood. Judge Darby ordered the mother to report to the Tate County Jail at 3:00 p.m., to be taken into the custody of the Tate County Sheriff, and to be held there until further order of the court. Three days later, on July 19, 2010, the mother was released from custody after being brought back before Judge Darby.
¶ 8. On December 18, 2010, based upon the citizen complaint of the mother, the Commission filed a “Formal Complaint” against Judge Darby. The “Formal Complaint” provided that Judge Darby had violated various Canons of the Code of Judicial Conduct and engaged in conduct actionable pursuant to Section 177A of the Mississippi Constitution. Counsel for Judge Darby filed her “Answer to Formal Complaint.”
¶ 9. Subsequently, “in lieu of a hearing!!,]” the Commission and Judge Darby, through her counsel, filed an “Agreed Statement of Facts and Proposed Recommendation.” Judge Darby agreed that she had violated Canons l,[5] 2A,[6] and 3B(2)[7] of *1041 the Code of Judicial Conduct “when she wrongly imposed sanctions against [the mother] for contempt of court without first affording her the due process rights required in a criminal contempt matter.” She farther agreed that such conduct was actionable pursuant to Section 177A of the Mississippi Constitution, “as said conduct constitutes misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.” The jointly proposed recommendation to the Commission was a public reprimand, a $500 fine, and assessed costs of $100.
¶ 10. The Commission unanimously agreed to “accept and adopt the Agreed Statement of Facts and Proposed Recommendation and recommend to the Mississippi Supreme Court that [Judge Darby] be publicly reprimanded, fined $500.00 and assessed cost[s].” That recommendation was incorporated in the “Commission Findings of Fact and Recommendation,” which revealed that the Commission’s conclusion was based upon the evidence presented, Judge Darby’s history with the Commission, the mitigating factor of Judge Darby “acknowledging] her actions and ... cooperating] fully with the Commission in its investigation[,]” and the other factors delineated in Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004), overruled in part by Mississippi Commission on Judicial Performance v. Boone, 60 So.3d 172 (Miss.2011).
¶ 11. This matter has been presented to this Court, pursuant to Section 177A of the Mississippi Constitution and Rule 10A of the Rules of the Mississippi Commission on Judicial Performance. See Miss. Const, art. 6, § 177A; Miss. Comm’n on Judicial Performance R. 10A.
ISSUES
¶ 12. This Court will consider:
(1) Whether Judge Darby’s conduct violated Canons 1, 2A, and 3B(2) of the Mississippi Code of Judicial Conduct and was actionable pursuant to Section 177A of the Mississippi Constitution.
(2) Whether Judge Darby should be publicly reprimanded, fined $500 pursuant to Section 177A of the Mississippi Constitution, and assessed costs of $100.
ANALYSIS
¶ 13. “Our state constitution states that this Court has authority to sanction a judge ‘[o]n recommendation of the commission on judicial performance....’ ... [I]n cases coming to us from the [Commission], the Court, in making a ‘final determination of the appropriate action to be taken in each case, ... conduces] an independent inquiry of the record’ .... ” Boone, 60 So.3d at 176 (quoting Miss. Const. art. 6, § 177A (1890); In re Anderson, 412 So.2d 743, 746 (Miss.1982)).
I. Whether Judge Darby’s conduct violated Canons 1, 2A, and 3B(2) of the Mississippi Code of Judicial Conduct and was actionable pursuant to Section 177A of the Mississippi Constitution.
¶ 14. In the “Agreed Statement of Facts and Proposed Recommendation,” Judge Darby acknowledges that, by “wrongly imposing] sanctions against [the mother] for contempt of court without first *1042 affording her the due process rights required in a criminal contempt matter[,]” she violated Canons 1, 2A, and 3B(2) of the Code of Judicial Conduct and engaged in conduct actionable pursuant to Section 177A of the Mississippi Constitution. This Court agrees.
¶ 15. According to Judge Darby, the power she exercised was one of criminal contempt.[8] A finding of criminal contempt was based upon Jackson’s failure to admit T.J. to Parkwood. As that act occurred “in whole or in part ... outside the presence of the judge[,]” it was a form of “indirect” or “constructive” criminal contempt. Graves, 66 So.3d at 153. See also Cooper Tire & Rubber Co. v. McGill, 890 So.2d 859, 868 (Miss.2004) (quoting In re Williamson, 838 So.2d 226, 237 (Miss.2002)) (“constructive contempt involves actions which are committed outside the presence of the court.”). This Court has stated that a finding of “indirect” criminal contempt requires the existence of a valid, prior court order. See Graves, 66 So.3d at 153 (citing Premeaux v. Smith, 569 So.2d 681, 684 (Miss.1990)). The “Agreed Statement of Facts and Proposed Recommendation” acknowledges that, at the time of the contempt proceeding, “no written Order had been issued by [Judge Darby] memorializing the verbal directions given to” the mother at either the June 7, 2010, hearing or the June 14, 2010, review hearing. (Emphasis added.) Furthermore, the “Detention Order” and “Review Order” (both filed post-hearing on August 19, 2010) provided only, in pertinent part, that T.J. was “to be taken immediately to a mental/behavioral health center for assessment and evaluation[;]” that an “appointment for T.J. with Communicare shall be made as soon as possible[;]” and that once T.J. had health insurance coverage, “she shall return to Parkwood to complete the evaluation and assessment process.” Despite the absence of these written orders, the mother arguably complied with each of these directions.
¶ 16. Additionally, in cases of “indirect” criminal contempt, “defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.” Cooper Tire, 890 So.2d at 868 (quoting In re Williamson, 838 So.2d at 237). See also Graves, 66 So.3d at 154 (in cases of “indirect” criminal contempt, the accused con-temnor is “entitled to due-process notice and a hearing”); Miss. Comm’n on Judicial Performance v. Byers, 757 So.2d 961, 970 (Miss.2000) (quoting Purvis v. Purvis, 657 So.2d 794, 798 (Miss.1994)) (“procedural safeguards required for a charge of constructive contempt ... are: ‘... a specific charge, notice and a hearing’ ”). Judge Darby concedes that she “failed to provide [the mother] with due process or otherwise comply with the procedural safeguards outlined in [Cooper Tire ].”
¶ 17. Finally, “in cases of indirect or constructive criminal contempt, ‘where the trial judge has substantial personal involvement in the prosecution, the accused contemnor must be tried by another judge.’ ” Graves, 66 So.3d at 154 (quoting Cook v. State, 483 So.2d 371, 376 (Miss.1986)). See also Cooper Tire, 890 So.2d at *1043 869 (“a person charged with constructive criminal contempt is afforded certain procedural safeguards. The citing judge must recuse himself from conducting the contempt proceedings involving the charges.”). As the “citing judge,” Judge Darby abused her contempt powers by failing to recuse herself from this “indirect” criminal contempt proceeding. Id.
¶ 18. The “misuse of the contempt power is prejudicial to the administration of justice....” Miss. Comm’n on Judicial Performance v. Sanders, 749 So.2d 1062, 1069 (Miss.1999). This Court previously has found that similar abuses of contempt powers violated Canons 1 and 2A of the Code of Judicial Conduct and were actionable pursuant to Section 177A of the Mississippi Constitution. See Miss. Comm’n on Judicial Performance v. Gunter, 797 So.2d 988, 990 (Miss.2001); Miss. Comm’n on Judicial Performance v. Willard, 788 So.2d 736, 743 (Miss.2001); Byers, 757 So.2d at 972; Sanders, 749 So.2d at 1070. As to Canon 3B(2), this Court concludes that Judge Darby’s conduct in the “indirect” criminal contempt proceeding plainly violated that Canon’s requirement of being “faithful to the law....”
¶ 19. As Judge Darby’s conduct violated Canons 1, 2A, and 3B(2) of the Code of Judicial Conduct and was actionable pursuant to Section 177A of the Mississippi Constitution, this Court next addresses “the appropriate sanctions to impose” upon Judge Darby. Sanford, 941 So.2d at 213.
II. Whether Judge Darby should be publicly reprimanded, fined $500 pursuant to Section 177A of the Mississippi Constitution, and assessed costs of $100.
¶ 20. Under Section 177A of the Mississippi Constitution, “[o]n recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state-” Miss. Const. art. 6, § 177A. Fundamentally, the sanction(s) “ought [to] fit the offense” and there should be a “principled consistency with other like cases.” In re Bailey, 541 So.2d 1036, 1039 (Miss.1989). In examining the appropriateness of the sanction(s), the following factors should be considered:
(1) The length and character of the judge’s public service; (2) Whether there is any prior case law on point; (3) The magnitude of the offense and the harm suffered; (4) Whether the misconduct is an isolated event or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and (6) The presence or absence of mitigating or aggravating circumstances.
Gibson, 883 So.2d at 1158.

(1) The length and character of the judge’s public service

¶ 21. Judge Darby was appointed to serve as Family Master/Youth Court Judge for the Third Chancery Court District in the fall of 2007. She hears all involuntary commitment actions, as well as youth-court matters, including the Tate County Juvenile Drug Court. She is a member and past board member of the Tate County Rotary Club. She serves as a trustee of the Senatobia Municipal School District endowment for education. She is a member of the Sardis Church of Christ.

(2) Whether there is any prior caselaw on point.

¶ 22. In the similar abuse-of-contempt-powers cases noted in ¶ 18 supra, comparable sanctions were imposed. See Gunter, 797 So.2d at 992 (public reprimand, $1,500 fine, and assessed costs of the proceeding, although other offenses were involved); Willard, 788 So.2d at 746 (remov *1044 al from office and assessed costs of the proceeding, although numerous other offenses were involved); Byers, 757 So.2d at 973 (public reprimand, $1,500 fíne, and assessed costs of the proceeding, although other offenses were involved); Sanders, 749 So.2d at 1073 (public reprimand and assessed costs of the proceeding ($2,156.80)).

(3) The magnitude of the offense and the harm suffered

¶ 23. Judge Darby’s failure to adhere to proper procedure when exercising her contempt powers is serious, given the deprivation of liberty in this matter. Her actions caused a definite negative impact on the lives of the mother and her family.

(If) Whether the misconduct is an isolated event or evidences a pattern of conduct.

¶24. Judge Darby does not have any prior history with the Commission.

(5) Whether moral turpitude was involved.

¶ 25. According to the “Memorandum Brief in Support of Joint Motion for Approval of Recommendations Filed by the Mississippi Commission on Judicial Performance,” Judge Darby “abused the judicial process by incarcerating an individual for indirect criminal contempt without providing her with the basic rights of due process thereby constituting moral turpitude.” This Court has stated that “moral turpitude” includes “actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.” Miss. Comm’n on Judicial Performance v. Osborne, 16 So.3d 16, 24 (Miss.2009) (“Osborne IV”) (citation omitted). Under that standard, this Court concludes that Judge Darby’s conduct did not rise to the level of moral turpitude. But the absence of moral turpitude does not alter this Court’s agreement with the recommended sanction. See ¶ 27 infra.

(6) The presence or absence of mitigating or aggravating circumstances

¶ 26. Judge Darby acknowledged her errors by entering into the “Agreed Statement of Facts and Proposed Recommendation,” without the necessity of a hearing, and cooperating with the Commission in its investigation.

Analysis

¶ 27. Taking into account the Gibson factors, most notably, the fact that Judge Darby has no prior history before the Commission, the comparable sanctions imposed in similar abuse-of-contempt-powers cases, and Judge Darby’s cooperation with the Commission and agreement with the recommended sanction, this Court concludes that the recommended sanction “fit[s] the offense” and is consistent “with other like cases.” In re Bailey, 541 So.2d at 1039. Accordingly, the appropriate sanction is for Judge Darby to be publicly reprimanded, fined $500, and assessed costs of $100.
CONCLUSION
¶ 28. After conducting an independent review of the record, this Court finds that Judge Darby’s conduct violated Canons 1, 2A, and 3B(2) of the Mississippi Code of Judicial Conduct and was actionable pursuant to Section 177A of the Mississippi Constitution. We order that Judge Darby be publicly reprimanded, fined $500, and assessed costs of $100.
¶ 29. TATE COUNTY YOUTH COURT JUDGE LEIGH ANN DARBY SHALL BE PUBLICLY REPRIMANDED, FINED $500, AND ASSESSED *1045 COSTS OF $100. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE TATE COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VENIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE DARBY IN ATTENDANCE.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., KITCHENS, CHANDLER AND KING, JJ„ CONCUR. LAMAR AND PIERCE, JJ., NOT PARTICIPATING.

. The “Facts” are largely taken from the "Agreed Statement of Facts” filed by the Commission and Judge Darby.

. The “Agreed Statement of Facts” provided that the mother was employed as a janitor and that the subject employee health-care coverage had a $500 deductible.

. No written orders from Judge Darby had been signed at the time. On August 19, 2010, a "Detention Order” dated June 7, 2010, but not signed until August 18, 2010, was filed. That order provided, in pertinent part, that T.J. was to be placed on "strict house arrest[,]” was to "be taken immediately to a mental/behavioral health center for assessment and evaluation^]” and that "[t]his cause shall be set for a review of this on June 14, 2010....”

.No written orders from Judge Darby had been signed at the time. On August 19, 2010, a "Review Order” dated June 14, 2010, but not signed until August 18, 2010, was filed. That order provided, in pertinent part, that "[a]n appointment for [T.J.] with Communi-care shall be made as soon as possible!,]” and that "[o]nce [T.J.] is covered under some type of health insurance, she shall return to Park-wood to complete the evaluation and assessment process.”

. Canon 1 of the Code of Judicial Conduct provides, in pertinent part, that "[a] judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.”

. Canon 2A of the Code of Judicial Conduct provides that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence *1041 in the integrity and impartiality of the judiciary."

. Canon 3B(2) of the Code of Judicial Conduct provides that "[a] judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.”

. This Court recently distinguished the purposes of civil and criminal contempt, as follows:
[jludges use the power of civil contempt to compel compliance with their instructions, admonitions, and previous orders; and they use the power of criminal contempt to punish inappropriate behavior, such as insulting remarks to the courts, or acts that demonstrate the accused "wilfully and deliberately ignored the order of the court.”
Graves v. State, 66 So.3d 148, 151 (Miss.2011) (citations omitted).