DICKINSON, Presiding Justice,
for the Court:
¶ 1. Tunica County Circuit Court Judge Albert B. Smith III acknowledged that he abused his contempt powers and exhibited poor courtroom demeanor. The Mississippi Commission on Judicial Performance recommends punishment of a public reprimand, a $1,000 fíne, and an assessment of costs totaling $100. We accept the Commission’s recommendation.
BACKGROUND FACTS AND PROCEEDINGS
¶ 2. In 2006, Richard Becton failed to appear at his scheduled arraignment. When he later appeared and announced that he did not have counsel, Judge Smith responded, “You don’t take these charges serious [sic] do you?” After appointing counsel to represent Becton, Judge Smith said: “I would suggest you call [your counsel] ‘cause if you are convicted, I’m going to get you.” And according to the agreed statement of facts, Judge Smith told Bec-ton’s bail bondsman, Marshall Sanders, to “get on top of getting his people to court at the right time.” Then, after threatening to hold Sanders in contempt of court when, in future cases, his clients fail to appear as scheduled, Judge Smith ordered him jailed for a week — but released him after he had served three days.
¶ 3. In 2009, attorney Robert Little represented two clients who appealed their DUI (driving under the influence) convic *891 tions from the Tunica County Justice Court to Judge Smith’s court. When the first case was called for trial, Little and prosecutor Charles Graves both announced to Judge Smith that the case was not ready to proceed because the State had failed to comply with discovery. Judge Smith granted a continuance, set the case for trial, and admonished counsel to be prepared for trial. He then entered an order requiring the State to comply with defendant’s discovery requests.
¶ 4. The day before the trials of Little’s two clients were to begin, Graves informed the court administrator that he would be presenting proposed orders of dismissal for both cases, due to the arresting agency’s failure to provide the videos of his clients’ arrests. The following day, when Judge Smith called the first case for trial, Little was temporarily out of the courtroom, but Graves was present. When he attempted to approach the bench to present an order of dismissal, Judge Smith found both Little and Graves in contempt, imposing a fine against each and imprisoning Graves for several hours, during which — without having Graves brought into the courtroom — Judge Smith held a hearing on the contempt matter. Graves appealed Judge Smith’s judgment of contempt against him, and this Court reversed the judgment, finding that Judge Smith had violated Graves’s due process rights.[1]
¶ 5. In September and October 2009, the Commission formally charged Judge Smith with willful misconduct in office and conduct prejudicial to the administration of justice. In lieu of a hearing, the Commission and Judge Smith signed an Agreed Statement of Facts and Proposed Recommendation. The record — consisting of the agreed factual findings and clerk’s papers — was filed with this Court without objection. Judge Smith and the Commission signed a Joint Motion for Approval of Recommendation, and the Commission filed a supporting brief.
¶ 6. Judge Smith’s brief, while supporting the joint motion, included factual allegations and assertions that disputed portions of the Agreed Statement and Joint Motion, so the Commission moved to strike those contradictory portions. Judge Smith responded, arguing that the parties had an understanding that he could present “mitigating” facts surrounding the circumstances leading to the contempt orders. Judge Smith also moved to strike the portion of the Commission’s brief that discussed prior informal actions taken against him.
¶ 7. We granted both motions because the post-agreement factual assertions by both parties were an impermissible attempt to supplement the record already filed with this Court.[2]
ANALYSIS
¶ 8. Ordinarily, in reviewing contested judicial misconduct cases, we conduct an “independent inquiry of the record” and, in doing so, “accord careful consideration to the findings of fact and recommendations of the Commission, or its committee, which has had an opportunity to observe the demeanor of the witnesses.” [3] But where, as here, the judge and Commission agree on the facts, we *892 ordinarily will accept the findings as true.[4]
¶ 9. And in deciding what conduct is sanctionable, and the appropriate punishment for sanctionable conduct, we look to Article 6, Section 177A of our Constitution:
On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute....
Miss. Const. Art. 6, § 177A.
¶ 10. Section 177A’s prohibition against “conduct prejudicial to the administration of justice” brings into play the five canons of the Mississippi Code of Judicial Conduct.[5] And we have defined Section 177A’s term “willful misconduct in office” as
“[t]he improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith.... A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of authority constitutes bad faith.... Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.”[6]
I. Judge Smith’s Violations
¶ 11. According to the Commission’s findings, Judge Smith violated Canons 2A and 3B(4) by addressing the lawyers and bail bondsman discourteously, that is, without respect and appropriate judicial temperament; and he violated Canons 2A, 3B(2), 3B(4), and 3B(8) by wrongly imposing contempt sanctions against two lawyers and a bail bondsman. The Commission also alleges he violated Canons 2A, 3B(4), and 3B(8) when he told a defendant “[i]f you’re convicted, I’m gonna get you.” We agree.
¶ 12. While I cannot dispute that my friend, Justice Kitchens, has vast experience and a storied and commendable tenure at the bar, I must say that my own three decades as a lawyer suggest that one knows a discourteous judge when encountering him or her in the courtroom; and a word or phrase discourteously said in the courtroom may very well not appear — on paper — to have been said discourteously. But the proof-in-the-pudding in this case is that Judge Smith agreed his “demeanor during the hearings was confrontational and discourteous to counsel ...,” and we take him at his word.
II. Sanctions
¶ 13. To assist our determination of appropriate sanctions, we have de *893 veloped six factors to be applied to the facts of each case: (1) the length and character of the judge’s public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of misconduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating circumstances.[7]

A. Length and Character of Judge’s Public Service

¶ 14. Other than Judge Smith’s eleven-year tenure as a judge, the record is silent regarding the length and character of his public service.

B. Prior Caselaw

¶ 15. We have made it quite clear that the power granted to judges does not license them to be disrespectful to the lawyers and citizens who appear in their courtrooms; and that judges must conduct themselves with appropriate judicial demeanor.
In re Blake[8]
¶ 16. In Blake, addressing the trial judge’s protracted display of inappropriate vitriol and disrespect for one of the lawyers in the case, we stated:
The record provides no justification whatsoever for [the judge’s] animosity and sarcasm toward [the lawyer]. We recognize and endorse a trial judge’s duty to control the courtroom, using reasonable measures to efficiently move matters along and keep over-zealous counsel in check. However, the professional obligations of dignity, respect and decorum [are] not limited to counsel. Canon I of the Code of Judicial Conduct states, “A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.”[9]'
Mississippi Commission on Judicial Performance v. Spencer[10]
¶ 17. We also have said that, in an appropriate case, a judge’s display of inappropriate judicial temperament may lead to removal from office. In Spencer, we found that the judge exhibited “outrageous, erratic conduct and hostile demean- or” to those exposed to him, and we stated that “[ejected members of the judiciary have a duty to conduct themselves with respect for those they serve, including the court staff and the litigants that come before them.”[11] We explained that if “judges do not behave with judicial temperament and perform their duties according to the law ... there seems little hope that our citizenry at large may understand and respect the legal process.”[12]
Mississippi Commission on Judicial Performance v. Gunter[13]
¶ 18. In Gunter, we cited Municipal Court Judge George Gunter for abusing his contempt powers when he called a *894 defendant’s mother before the bench and “harshly berated and humiliated her.”[14] When the mother attempted to speak, Judge Gunter ordered her arrested for contempt of court.[15] Judge Gunter did not send any papers to the detention center but ordered that the mother be held twenty-four hours without bond.[16] Several hours later, he called the detention center and had her released.[17] The Court found that Judge Gunter had violated the Code of Judicial Conduct and sanctioned him with a public reprimand, $1,500 fine, and costs of the proceedings.[18]

Mississippi Commission on Judicial Performance v. Byers 
[19]

¶ 19. Circuit Court Judge Shirley C. Byers was charged with abuse of contempt powers for holding a newspaper reporter in contempt after learning the reporter had disobeyed an order restricting publication of an article about a court proceeding.[20] She had the reporter arrested and brought before her, but no affidavit, show-cause order, or notice of hearing was filed, nor was the reporter allowed to present any witnesses or evidence.[21]
¶ 20. The Commission charged Byers with six counts of judicial misconduct, including the abuse-of-contempt charge, and the Court opined that her misuse of contempt powers was “the most troubling and serious” offense.[22] The Court found that Byers had abused her powers by incorrectly handling the constructive-contempt situation, and it ordered Judge Byers to be publicly reprimanded and to pay a $1,500 fine and costs amounting to $2,023.59.[23]

C. The Magnitude of the Offense and the Harm Suffered

¶ 21. Judge Smith’s failure to adhere to proper procedure when exercising his contempt power was a serious abuse of power because of the incarceration and threats of incarceration in the two matters before him. His actions caused a negative impact on Graves and Sanders because of the deprivation of their liberty. A less serious, albeit significant, impact to Graves, Little, Sanders, and Becton was the abusive and disrespectful behavior to which they were subjected.

D. Isolated Incident or Pattern of Conduct

¶ 22. The record contains no information or indication that Judge Smith’s behavior in these two cases was part of a pattern of similar conduct.

E. Moral Turpitude

¶ 23. This Court has defined “moral turpitude” as “including], but not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.”[24]
¶ 24. This Court expanded the definition to include a violation of “some basic *895 tenets of daily living in a civil society, such as living by the standards of fundamental decency and honesty by not abusing the judicial process, and by revering the law and the judicial system, and upholding the dignity and respect of the judiciary through appropriate conduct and behavior toward others.”[25] Judge Smith abused the judicial process by incarcerating and threatening to incarcerate individuals for contempt without providing them basic due process rights, and his actions constituted moral turpitude.

F. Mitigating or Aggravating Circumstances

¶ 25. This Court has held that mitigating circumstances exist when a judge publicly acknowledges the inappropriateness of the conduct and agrees with the Commission’s findings.[26] We accept Judge Smith’s agreement with the Commission’s findings and the proposed sanctions in mitigation of his inappropriate conduct. The record includes no evidence of aggravating circumstances.
Conclusion
¶ 26. We find that Judge Smith violated Canons 2A, 3B(2), 3B(4), and 3B(8) of the Mississippi Code of Judicial Conduct and, therefore, committed willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, as referenced in Article 6, Section 177A of the Mississippi Constitution. After reviewing the agreed facts submitted by the Commission and Judge Smith; and after giving careful consideration to the Commission’s recommendations, we order that Judge Smith be publicly reprimanded, fined $1,000, and assessed $100 in court costs.
¶ 27. TUNICA COUNTY CIRCUIT COURT JUDGE ALBERT B. SMITH, III, SHALL BE PUBLICLY REPRIMANDED, PAY A $1,000 FINE, AND BE ASSESSED COSTS OF $100. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE TUNICA COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VE-NIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE SMITH IN ATTENDANCE.
WALLER, C.J., AND PIERCE, J., CONCUR. CARLSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.; RANDOLPH AND KITCHENS, JJ„ JOIN THIS OPINION IN PART. RANDOLPH, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J.; KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION IN PART. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.; CARLSON, P.J., JOINS THIS OPINION IN PART.

. Graves v. State, 66 So.3d 148 (Miss.2011).

. See, e.g., Miss. Comm'n on Judicial Performance v. Dearman, 66 So.3d 112 (Miss.2011).

. Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss.2011) (quoting In re Removal of Lloyd W. Anderson, Justice Court Judge, 412 So.2d 743, 746 (Miss.1982)).

.This statement raises concern for Presiding Justice Carlson, but his concern is misplaced. We announce no new standard of review today. We continue to conduct our own independent inquiry of the record. But we are unable to find a single case where we have failed to accept agreed findings of fact as true. Thus, we are justified in our conclusion that we "ordinarily” accept them as true. But in a particular case in which we do not agree with the agreed facts — should such a case ever arise — -we are certainly free to reject them.

. Miss.Code of Judicial Conduct pmbl.

. In re Quick, 553 So.2d 522, 524-25 (Miss. 1989).

. Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004), overruled in part on other grounds by Boone, 60 So.3d at 177.

. In re Blake, 912 So.2d 907 (Miss.2005).

. Id. at 914.

. Miss. Comm’n on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998).

. Id. at 178.

. Id.

. Miss. Comm’n on Judicial Performance v. Gunter, 797 So.2d 988 (Miss.2001).

. Id. at 989.

. Id.

. Id. at 990.

. Id.

. Id. at 992.

. Miss. Comm'n on Judicial Performance v. Byers, 757 So.2d 961 (Miss.2000).

. Id. at 970.

. Id.

. Id.

. Id. at 973.

. Gibson, 883 So.2d at 1158 n. 2.

. Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 217 (Miss.2006).

. Gibson, 883 So.2d at 1158.