COLEMAN, Justice,
for the Court:
¶ 1. The Mississippi Commission on Judicial Performance (the “Commission”) filed a formal complaint against Municipal Court Judge Robert Earl Fowlkes regarding a verbal altercation he had with a probation officer outside the courtroom. The Commission and Judge Fowlkes have filed a joint motion asking the Court to approve agreed-upon sanctions of a public *906 reprimand and costs of $200. We agree that Judge Fowlkes should be publicly reprimanded and assessed $200 for the costs of proceedings, and we find that he also should be fined $1,000.
Facts and Procedural History
¶ 2. On February 22, 2012, Judge Fowlkes presided over municipal court in the City of Aberdeen. Wylie Blanchard was present in the courtroom with his girlfriend, who was a litigant before Judge Fowlkes. Judge Fowlkes was Blanchard’s landlord at the time. Probation Officer Carolyn Gunn was also in attendance. Gunn believed there was an outstanding arrest warrant against Blanchard and, after court adjourned, she spoke to him about it. Blanchard complained to Judge Fowlkes that Gunn was going to put him in jail. Judge Fowlkes told Gunn that she did not have authority to arrest Blanchard, and Gunn explained that she would not be the one to arrest Blanchard but that she thought he had an outstanding warrant against him. A loud argument ensued between Judge Fowlkes and Gunn. Gunn turned away to determine if the clerk’s office had a copy of the warrant, and Judge Fowlkes told Gunn not to walk away while he was talking to her. Judge Fowlkes repeated that instruction after following Gunn into the clerk’s office, then threatened to hold her in contempt of court. Gunn replied that she could not be arrested for contempt of court, because they were not in the courtroom and Judge Fowlkes had adjourned court. Judge Fowlkes told Gunn to shut up and get out, and he had two police officers escort her from the clerk’s office.
¶ 3. On September 25, 2012, the Commission filed a formal complaint against Judge Fowlkes, charging him with violating Canons 1, 2A, 2B, 3B(2), 3B(4), and 3C(1) of the Code of Judicial Conduct and Section 177A of the Mississippi Constitution. Judge Fowlkes responded that he did not think his “actions were bringing any integrity problems or reflecting on his judgship.” He claimed that there had been no yelling and that he had not threatened Gunn, and he suggested that Gunn had been “out of order” for “blowing] up on” him. By February 14, 2013, Judge Fowlkes and the Commission had come to an agreement on the facts of the dispute and recommendations for sanctions. In lieu of an evidentiary hearing, Judge Fowlkes and counsel for the Commission submitted an Agreed Statement of Facts and Proposed Recommendation. Judge Fowlkes admitted that it was improper to “(1) use his judicial office to advance the private interests of others, (2) misuse his contempt power, and (3) be impatient and discourteous to those with whom he deals with in his official capacity.” He agreed that such impropriety constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute, which violated the Code of Judicial Conduct. The Commission and Judge Fowlkes filed a Joint Motion for Approval of Recommendations with the Court on June 7, 2013, recommending that Judge Fowlkes be publicly reprimanded and assessed costs of $200.
Discussion
¶ 4. In a judicial performance case, the Court is required to conduct an independent review of the entire record and, while we give deference and consideration to the Commission’s findings of fact and recommendations, the “final determination of the appropriate action to be taken” belongs to the Court and we are not bound by the Commission’s recommendations. Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176-77 (¶¶ 8-9) (Miss.2011) (internal citations omitted).
*907 ¶ 5. Pursuant to Article 6, Section 177A of the Mississippi Constitution of 1890, as amended, judges in Mississippi may be fined, publicly censured or reprimanded, suspended, or removed from office by the Mississippi Supreme Court upon recommendation from the Commission. Of the five grounds for which a judge may be sanctioned, the two most relevant to the instant case are willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. See Miss. Const, art. 6, § 177A(b), (e) (1890). We have said:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith.... A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.
Miss. Comm’n on Judicial Performance v. Hartzog, 32 So.3d 1188, 1193 (¶ 12) (Miss.2010) (quoting Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 212-13 (¶ 7) (Miss.2006)). We have held that actual willfulness is not always required, as a judge’s “negligence or ignorance not amounting to bad faith” can have the same effect of being prejudicial to the administration of justice and bringing the judicial office into disrepute. Hartzog, 32 So.3d at 1193 (¶ 12) (quoting In re Anderson, 451 So.2d 232, 234 (Miss.1984)).
¶ 6. In the instant case, Judge Fowlkes failed to remove himself from the adversarial matter between Gunn and his tenant. As Blanchard’s landlord, Judge Fowlkes had a vested financial interest in Blanchard remaining out of jail. His impatience and discourteousness towards Gunn, along with improper threats to hold her in contempt of court, created the appearance that he was influenced by the landlord-tenant relationship and that he was using his office to advance the private interests of himself and Blanchard.
¶7. Judge Fowlkes admitted that his conduct violated the Code of Judicial Conduct, specifically Canon 1 (judge shall observe standards that preserve the integrity and independence of the judiciary); Canon 2A (judge’s conduct shall promote public confidence in the integrity and impartiality of the judiciary); Canon 2B (judge’s personal relationships shall not influence judicial conduct or judgment); Canon 3B(2) (judge shall be faithful to the law and maintain competence in the law); Canon 3B(4) (judge shall be “patient, dignified, courteous” to those he deals with in his official capacity); and Canon 3C(1) (judge shall be diligent and impartial in the discharge of his administrative duties). Judge Fowlkes agreed that violations of these canons amounted to a violation of Section 177A of the Mississippi Constitution, because his actions constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
¶ 8. Judge Fowlkes and the Commission filed a joint motion recommending that Judge Fowlkes be publicly reprimanded and be assessed $200 for the costs of the proceedings against him. We previously established six factors to be considered when determining whether sanctions are appropriate in a judicial misconduct proceeding. See Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (¶ 9) (Miss.2004) overruled in part on other grounds by Boone, 60 So.3d 172. However, we recently modified the Gibson factors and held that the fifth factor— whether moral turpitude was involved—should not be a factor in determining the appropriateness of sanctions. Miss. Comm’n on Judicial Performance v. Skin *908 ner, 119 So.3d 294, 307 (¶ 32) (Miss.2013). “Instead, this Court will examine the extent to which the conduct was willful, and the extent to which the conduct exploited the judge’s position to satisfy his or her personal desires or was intended to deprive the public of assets or funds rightfully belonging to it.” Id.
¶ 9. Thus, after Skinner, the factors to be considered in determining the appropriateness of sanctions are: (1) the length and character of the judge’s public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) the extent to which the conduct was willful; (6) the extent to which the conduct exploited the judge’s position to satisfy his or her personal desires or was intended to deprive the public of assets or funds rightfully belonging to it; and (7) the presence or absence of mitigating or aggravating circumstances. Skinner, 119 So.3d at 301 (¶ 32). In applying these factors, we must keep in mind that “the primary purpose of sanctions is ‘to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses,’ rather than punishment of the individual.” Id. at ¶ 12 (quoting Boone, 60 So.3d at 185).

1. Length and character of public service

¶ 10. Judge Fowlkes currently holds three offices: Justice Court Judge for Monroe County, Municipal Court Judge for the City of Aberdeen, and Municipal Court Judge for the City of Smithville. He has served as Justice Court Judge for Monroe County for the past fourteen years, as Municipal Court Judge for the City of Aberdeen for the past eleven years, and as Municipal Court Judge for the City of Smithville for the past six years. He previously served as Municipal Court Judge for the City of Hatley for four years. The record is silent as to the character of that service and as to any other public service.

2. Prior caselaw on point

¶ 11. We have said that the “guiding factor” in determining an appropriate sanction is whether it fits the offense, and that “is best measured by comparison with sanctions handed down in prior cases for the listed offense.” Miss. Comm’n on Judicial Performance v. Dearman, 73 So.3d 1140, 1142 (¶ 7) (Miss.2011) (quoting Miss. Comm’n on Judicial Performance v. Britton, 936 So.2d 898, 906 (¶ 19) (Miss.2006)).
A. Misuse of contempt power
¶ 12. Regarding Judge Fowlkes’s misuse of his contempt power in threatening to hold Gunn in contempt, no direct case is on point. We have seen several cases in which judges actually held persons in contempt of court, rather than only making a threat. In Mississippi Commission on Judicial Performance v. Smith, 78 So.3d 889 (Miss.2011), Judge Smith abused his contempt power and exhibited poor courtroom demeanor. When a defendant failed to appear at his scheduled arraignment, Judge Smith threatened to hold the defendant’s bail bondsman in contempt of court if his clients failed to appear in the future, then he put the bail bondsman in jail for three days. Id. at 890 (¶ 2). In a second instance, Judge Smith held a lawyer in contempt of court and imprisoned him for several hours after the lawyer had attempted to approach the bench to present an order of dismissal. Id. at 891 (¶ 4). The judge then held contempt proceedings without the lawyer being present. Id. Judge Smith was publicly reprimanded, fined $1,000, and assessed $100 in court *909 costs. Id at 895 (¶ 26). The Court said, “[w]e have made it quite clear that the power granted to judges does not license them to be disrespectful to the lawyers and citizens who appear in their courtrooms; and that judges must conduct themselves with appropriate judicial demeanor.” Id. at 893 (¶ 15).
¶ 13. In Mississippi Commission on Judicial Performance v. Darby, 75 So.3d 1037 (Miss.2011), Judge Darby was found to have abused her criminal contempt power after she held a woman in custody for three days without due process. A teenager was before Judge Darby after being arrested on several occasions, and Judge Darby verbally instructed the teenager’s mother to have her daughter mentally evaluated and to obtain healthcare coverage for her. Id. at 1039-40 (¶¶ 2-6). When the mother took her child for a mental evaluation, the treatment facility told her about the outpatient treatment program, and she called the court with concerns about the associated costs. Id. at 1040 (¶ 6). Judge Darby, through an intermediary, threatened to hold the mother in contempt of court if she did not leave her daughter at the treatment facility to participate in the program. Id. The mother was then told to appear in court that afternoon for hearing. Id. at 1040 (¶ 7). After the hearing, Judge Darby held the mother in contempt of court for failing to admit her child for outpatient treatment; the mother was taken into custody and held for three days without appropriate due process. Id. Judge Darby, who did not have any prior history with the Commission, was publicly reprimanded, fined $500, and assessed costs of $100. Id. at 1044 (¶¶ 24, 28).
¶ 14. Unlike Judge Smith and Judge Darby, Judge Fowlkes had adjourned court and was outside the courtroom when he threatened to hold Gunn in contempt of court, and he did not follow through on that threat. Judges Smith and Darby actually held people in contempt and incarcerated them; those judges each were sanctioned with a fine, a public reprimand, and an assessment of costs. Smith, 78 So.3d at 895 (¶ 26); Darby, 75 So.3d at 1044 (¶ 28). Because Judge Fowlkes’s actions did not result in the unlawful deprivation of liberty of any person, the recommended public reprimand and assessment of court costs, without an additional fine, might be appropriate if Judge Fowlkes did not have a history before the Commission. Judge Darby and Judge Smith did not have a history of misconduct (although Judge Smith’s case involved multiple incidents). Judge Fowlkes, however, has been before the Commission twice before.
B. Lending prestige of judicial office to advance private interest
¶ 15. The Court has reviewed numerous cases in which judges lent the prestige of the judicial office to advance the private interest of others. For example, in Dear-man, Judge Dearman left a voice mail for a Florida circuit court judge identifying herself as a Mississippi justice court judge and recommending that the Florida judge set bond for a criminal defendant, who was Judge Dearman’s friend. Dearman, 73 So.3d at 1141 (¶ 2). Because Judge Dear-man had been before the Court recently on another matter that involved numerous violations, the Court imposed “suspension without pay for thirty days, a public reprimand, and costs of $100 upon her.” Id. at 1145 (¶ 17). The Court distinguished the punishment from that in a similar case, saying that while Judge Dearman’s conduct was “analogous to that in Thompson, in which we imposed only a public reprimand and costs, we find a harsher sentence is warranted in light of her recent misconduct.” Id. (citing Miss. Comm’n on Judicial Performance v. Thompson, 972 *910 So.2d 582 (Miss.2008) overruled in part on other grounds by Boone, 60 So.3d 172).
¶ 16. Judge Thompson had inappropriately “interjected himself into a case” from which he was recused by attempting to talk to another judge about an arrest warrant against someone he knew and, after the other judge signed the warrant, Judge Thompson asked a deputy clerk not to issue it. Thompson, 972 So.2d at 587 (¶ 11). Judge Thompson had one prior disciplinary action against him, in which he had been privately admonished for participating in ex parte communications with parties concerning a pending matter. Id. at 588 (¶ 17). He was publicly reprimanded and assessed costs of $100. Id. at 590 (¶ 23).
¶ 17. In Mississippi Commission on Judicial Performance v. Brown, 761 So.2d 182 (Miss.2000), Judge Brown was charged with “willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.” Id. at 184 (¶ 9). After Judge Brown’s son was arrested for a driving under the influence, Judge Brown contacted the judge assigned to the case, the arresting officer, and the arresting officer’s supervisor prior to the trial and throughout the appeal. Judge Brown defended against the charges; he admitted making the calls, but he denied any misconduct, saying he was acting only as a concerned father. Id. at 183-84 (¶¶ 8, 11). The Court held that the appropriate sanction was a public reprimand, a $500 fine, and an assessment of costs in the amount of $407.75. Id. at 186 (¶ 23).
¶ 18. Judge Fowlkes’s conduct did not rise to the level of that of Judges Dearman and Brown, who tried to talk to another judge about a case before them and attempted to influence the outcome of a pending case in favor of a friend or family member. Judge Fowlkes’s conduct is more akin to that of Judge Thompson, who tried to prevent an arrest warrant from being issued against someone he knew. Judge Thompson had one prior disciplinary action, but the Court found that it was unrelated, and he was given only a public reprimand and assessment of costs. Thompson, 972 So.2d at 590 (¶ 23). Judge Fowlkes, however, has been before the Commission twice before, and his prior misconduct is not entirely unrelated.

3. Magnitude of the offense and the harm suffered

¶ 19. Judge Fowlkes abused his contempt power, failed to be “patient, dignified, and courteous,” and impermissibly relied on the prestige of his judicial office to advance the private interests of himself and Blanchard. The Commission and Judge Fowlkes agree that Judge Fowlkes’s conduct “created the appearance” that he was influenced by his landlord-tenant relationship with Blanchard, “created the appearance of impropriety,” and resulted in “reduced public confidence in the integrity of the judiciary.” In addition to those wider public repercussions, Gunn was directly affected by Judge Fowlkes’s conduct because she was at the courthouse doing business in her line of work, and other people witnessed the dispute. Judge Fowlkes’s verbal altercation with Gunn took place in front of others in the hallway and in the clerk’s office, and Judge Fowlkes ended the heated conversation by having Gunn escorted from the clerk’s office by two police officers.

4. Isolated incident or pattern of misconduct

¶20. Judge Fowlkes has been investigated by the Commission twice before and sanctioned by this Court once before. In 2003, Judge Fowlkes was privately admonished after he acknowledged the impropriety of ex parte communication with litigants and using his influence to advance *911 the private interests of others. Miss. Comm’n on Judicial Performance v. Fowlkes, 967 So.2d 12, 15 (¶ 17) (Miss.2007). In 2007, Judge Fowlkes was before the Court after the Commission determined that from 2004 to 2005 he had “repeatedly engaged in prohibited ex parte conversations with a litigant and offered advice as to actions the litigant should take to advance her case.” Id. The Court noted that this was “virtually the same type of judicial misconduct” for which Judge Fowlkes had been privately admonished only one year earlier. Id. at 14 (¶ 9). Because it was “not Judge Fowlkes’s maiden voyage to the Commission for the aforementioned conduct[,]” Judge Fowlkes was publicly reprimanded, suspended for thirty days without pay, and assessed $100 in costs. Id. at 16 (¶ 21). The conduct at issue here is not identical to Judge Fowlkes’s prior misconduct, as the instant case did not involve ex parte communication with a litigant, but the conduct is similar in that Judge Fowlkes again tried to use his influence to advance the private interests of others.

5. Willfulness of the conduct

¶ 21. The ease sub judice is the first to apply the “willfulness of the conduct” factor since we established it in Skinner. In that case we explained the factor as follows:
In examining the extent to which the conduct was willful, we will examine “whether the judge acted in bad faith, good faith, intentionally, knowingly, or negligently.” In re Coffey’s Case, 157 N.H. 156, 949 A.2d 102, 115 (2008).... “[Misconduct that is the result of deliberation is generally more serious than that of a spontaneous nature.” [Id.] at 115-16. For example, spontaneous conduct, such as provoked conduct, may fall on one end of the spectrum, and may indicate a lesser sanction. Planned, premeditated conduct may fall on the opposite end of the spectrum, indicating the appropriateness of a harsher sanction. Conduct that is knowing and/or deliberate, but not the result of premeditation, may fall between spontaneous and premeditated conduct. Certainly, the analysis of the extent of willfulness will allow for consideration of acts of dishonesty.
Skinner, 119 So.3d at 307 (¶ 32). Judge Skinner issued an order in a case from which he was recused, and the Court found that his conduct was willful because he knew or should have known that it was wrong to so. Id. at 301 (¶ 33). We held that his “actions certainly were not the product of provocation or a spontaneous decision[.]” Id. In the instant case, although Judge Fowlkes should have known that his conduct was inappropriate, there is no evidence of planning or premeditation, as he could not have known that Gunn was even going to be present at the courthouse that day. Judge Fowlkes’s conduct would fall closer to the “spontaneous” end of the spectrum, warranting lesser sanctions.

6. Exploitation of the judge’s position

¶ 22. In Skinner, we added to the Gibson factors the consideration of “the extent to which the conduct exploited the judge’s position to satisfy his or her personal desires or was intended to deprive the public of assets or funds rightfully belonging to it.” Skinner, 119 So.3d at 297 (¶ 32). We wrote that “[w]hen analyzing the extent to which the conduct exploited the judge’s position to satisfy personal desires, we will examine factors such as whether the judge received money, received favors, or otherwise acted in a manner indicative of any improper personal motivation.” Id. As discussed above, Judge Fowlkes’s conduct may have been resulted from his desire to ensure that he received timely rent payments from his tenant, and his actions *912 could have been the result of “improper personal motivation.” The second part of the factor, whether the judge’s conduct “was intended to deprive the public of assets or funds rightfully belonging to it,” is not at issue here.

7. Mitigating or aggravating circumstances

¶ 23. In redefining the factors in Skinner, we noted that “inappropriateness of the action” could be considered under the aggravating circumstances factor. Skinner, 119 So.3d at 307 (¶ 32). We certainly find that Judge Fowlkes’s behavior toward Gunn was inappropriate. However, we have held that a judge’s public acknowledgment of the inappropriateness of his conduct is a mitigating factor. Smith, 78 So.3d at 895 (¶ 25), Although Judge Fowlkes first stated that he did not think his actions raised any integrity problems or reflected on his judgeship, he has since admitted that his actions were improper and violated the Code of Judicial Conduct. Thus, we accept Judge Fowlkes’s admission of wrongdoing in mitigation of his inappropriate conduct. The Commission and Judge Fowlkes state that there are no aggravating factors in the record, and the Court has found none.
¶ 24. .Although we appreciate cooperation with the Commission and we recognize the value of joint recommendations, which serve judicial economy and result in judges admitting wrongdoing, we advise the Commission not to disregard a judge’s pattern of misconduct and history before the Commission when recommending sanctions. While we accept a judge’s public acknowledgment of the inappropriateness of his conduct as a mitigating factor, it does not erase the past. As stated above, we must keep in mind that “the primary purpose of sanctions is ‘to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses,’ rather than punishment of the individual.” Skinner, 119 So.3d at 300 (¶ 12) (quoting Boone, 60 So.3d at 185). The public must be assured that the Commission and the Court take judicial misconduct seriously, and sanctions should be sufficient to restore the public’s confidence in the judicial system and in the judges of the state.
Conclusion
¶ 25. Judge Fowlkes attempted to use his judicial office to advance the private interests of his tenant, Blanchard, and by extension, his own private financial interests as Blanchard’s landlord. He was impatient and discourteous and abused his contempt power when arguing with Gunn. We conclude that Judge Fowlkes did indeed violate Canons 1, 2A, 2B, 3B(2), 3B(4), and 3C(1) of the Code of Judicial Conduct, and these violations also constituted a violation of Article 6, Section 177A of the Mississippi Constitution, because Judge Fowlkes’s conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
¶ 26. The Commission and Judge Fowlkes agreed on proposed sanctions of a public reprimand pursuant to Section 177A of the Mississippi Constitution and an assessment of costs of the proceedings in the amount of $200. They submit that the proposed sanctions are in line with similar cases and fit the offense. Were the instant offense Judge Fowlkes’s first, we would agree. However, we must remember that Judge Fowlkes has a history with the Commission and the Court. For Judge Fowlkes’s last offense, which was his second time before the Commission, he was publicly reprimanded, suspended for thirty days without pay, and assessed costs of $100. Fowlkes, 967 So.2d at 16 (¶ 21). Therefore, in addition to the agreed-upon public reprimand and $200 in costs, we *913 assess a fíne in the amount of $1,000 against Judge Fowlkes.
¶ 27. MUNICIPAL COURT JUDGE ROBERT EARL FOWLKES SHALL BE PUBLICLY REPRIMANDED, FINED $1,000, AND ASSESSED COSTS OF $200. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE MONROE COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VENIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE FOWLKES IN ATTENDANCE.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.