KING, Justice,
for the Court:
¶ 1. In this judicial misconduct case in which Hinds County Youth Court Judge *297 William L. Skinner, II took action in a case in which he was recused and abused the contempt power, Judge Skinner and the Mississippi Commission on Judicial Performance submit a Joint Motion for Approval of Recommendations, recommending that Judge Skinner be publicly reprimanded, fined $1,000, and assessed $100 in costs. This Court finds an appropriate sanction to be a thirty-day suspension without pay, a public reprimand, a $1,000 fine, and $100 in costs. Furthermore, this Court modifies Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004), and its progeny to the extent that they mandate this Court examine moral turpitude as a factor in determining sanctions. In its stead, this Court and the Commission should examine the extent to which the conduct was willful and exploited the judge’s position to satisfy his or her personal desires.

FACTS AND PROCEDURAL HISTORY

¶ 2. From January to February 2011, Judge Skinner presided over several cases in Hinds County Youth Court involving six minor siblings, the Cooper[1] children. In those cases, Judge Skinner issued a no-contact order between Mr. Cooper and the children. On February 25, 2011, Judge Skinner signed his order of recusal, stating that “an employee presently of the Hinds County Youth Court is related to the alleged perpetrator in this instance, namely [Mr. Cooper], as well as the person for which aforesaid motion for contempt is issued. Namely [Mrs. Cooper].” Also on February 25, a recusal order was entered disqualifying all Hinds County Court judges from the cases due to the employee being related to the parties to the cases. On March 3, 2011, this Court appointed a special judge, Judge John Price, judge of and for the County Court of Warren County, to preside over the matters involving the Cooper children.
¶ 3. Although he had recused himself on February 25, 2011, on March 21, 2011, Judge Skinner issued bench warrants for the arrests of Mr. and Mrs. Cooper for contempt of court for violation of the no-contact order. The warrants stated that Mr. and Mrs. Cooper each “shall be held without bond pending hearing in this matter — no bond per Honorable William “Bill” Skinner pending contempt hearing.” Mrs. Cooper was arrested in front of her children and the children were placed in the custody of the Department of Human Services (DHS). Both Mr. and Mrs. Cooper were held in custody for approximately seventy-two hours without notice or a hearing.
¶ 4. On April 3, 2012, the Commission, acting upon citizen complaints, filed a formal complaint against Judge Skinner charging him with several counts of judicial misconduct. The Complaint accused Judge Skinner of issuing bench warrants for the arrests of Mr. and Mrs. Cooper for contempt of court despite previously having recused himself from the cases involving the Cooper children. Further, the complaint accused Judge Skinner of ex parte communications. As a result of the issuance of the warrants for the arrests of Mr. and Mrs. Cooper, the complaint asserts that they were arrested and incarcerated for several days without notice, a hearing, or other required due process safeguards. The complaint thus alleges violations of Section 177A of the Mississippi Constitution of 1890, as well as of Canons 1, 2A, 3B(1), 3B(2), 3B(7), and 3(C)1 of *298 the Code of Judicial Conduct. On April 25, 2012, Judge Skinner filed an answer and a motion to dismiss. The Commission responded to Judge Skinner’s motion to dismiss on May 21, 2012, and the Honorable David Clark, Chairman, dismissed Judge Skinner’s motion to dismiss on June 28, 2012. A committee was established to hear the case on August 10, 2012.
¶ 5. On September 19, 2012, the Commission and Judge Skinner consented to an Agreed Statement of Facts and Proposed Recommendations in lieu of a hearing. The agreed-upon facts include:
1) On February 25, 2011, Judge Skinner recused himself from participation in the matters involving the Cooper siblings, as did the other Hinds County Court judges.
2) On March 3, 2011, this Court appointed a special judge to preside over the cases.
3) On March 21, 2011, Judge Skinner signed bench warrants ordering the arrests of Mr. and Mrs. Cooper for contempt of court for violation of the no-contact order issued in the cases. The warrants mandated Mr. and Mrs. Cooper be held without bond.
4) As a result of the issuance of the warrants, Mr. and Mrs. Cooper were arrested “and remained incarcerated for several days without notice, a hearing or benefit of other due process procedural safeguards as outlined in” Cooper Tire & Rubber Company v. McGill, 890 So.2d 859 (Miss.2004).
¶ 6. Judge Skinner and the Commission agreed that Judge Skinner violated Section 177A of the Mississippi Constitution, and Canons 1, 2A, 3B(1), and 3B(2) of the Code of Judicial Conduct. The agreement eliminated the charges regarding ex parte communications. The Commission and Judge Skinner proposed that Judge Skinner be publicly reprimanded, fined $1,000, and assessed costs in the sum of $100.
¶ 7. The entire Commission unanimously agreed to accept the Agreed Statement of Facts and Proposed Recommendation with minor changes on October 12, 2012, and entered its Findings of Facts and Recommendations on October 17, 2012. The Commission filed its Findings of Fact and Recommendations with this Court on October 23, 2012. A Joint Motion for Approval of Recommendations Filed by the Mississippi Commission on Judicial Performance, and supporting brief, were filed on November 21, 2012. In the joint motion, the Commission noted that Judge Skinner had been the subject of four prior disciplinary actions, but did not include the facts surrounding these instances. In fact, no factual information whatsoever regarding the four prior disciplinary actions was included in the record filed with this Court. In order for this Court to properly resolve this case, it is necessary for us to have access to all information considered by the Commission in making its recommendation.[2] Therefore, on its own motion, this Court ordered the Commission to submit to it copies of the four prior disciplinary files on Judge Skinner. This Court has received and reviewed these files.

ANALYSIS

¶ 8. This Court has the power, “[o]n recommendation of the commission on judicial performance,” to “remove from office, suspend, fine or publicly censure or *299 reprimand any justice or judge of this state for ... willful misconduct in office ... or [ ] conduct prejudicial to the administration of justice which brings the judicial office into disrepute!.]” Miss. Const, art. 6, § 177A. Willful misconduct in office includes “the improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith.... Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive.” Miss. Comm’n on Judicial Performance v. Boykin, 763 So.2d 872, 874 (Miss.2000) (quoting In re Quick, 553 So.2d 522, 524-25 (Miss.1989)). Bad faith may also be found when this Court finds “[a] specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority.” Boykin, 763 So.2d at 874-75 (quoting In re Quick, 553 So.2d at 524-25). Furthermore, “[w]illful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.” Boykin, 763 So.2d at 874-75. A judge may also bring the judicial office into disrepute through negligence, ignorance, or incompetence not amounting to bad faith. Id. at 875. “[T]his Court can generally recognize examples of such conduct when presented before the Court.” Id.
¶ 9. This Court, as the ultimate decision-maker in judicial performance cases, makes the final determination as to the appropriate action to be taken when a judge has committed willful misconduct or conduct prejudicial to the administration of justice that brings the judicial office into disrepute, and must conduct an independent review of the entire record. Miss. Comm’n on Judicial Performance v. Thompson, 80 So.3d 86, 88 (Miss.2012) (citing Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss.2011)). This Court “accord[s] careful con sideration [of] the findings of fact and recommendations of the Commission, or its committee.” Thompson, 80 So.3d at 88 (second alteration in original). However, “[t]his Court is not bound by the Commission’s findings, and [it] may impose additional sanctions.” Miss. Comm’n on Judicial Performance v. Osborne, 16 So.3d 16, 19 (Miss.2009). This is true even when the Commission and the judge enter into a joint recommendation-this Court’s acceptance of the joint recommendation is not a certainty. See Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 217-18 (Miss.2006) (placing judges and the Commission on notice that a joint recommendation does not guarantee that this Court will accept the recommended sanctions).
¶ 10. The Commission and Judge Skinner agree that he violated Canons l,[3] 2A,[4] 3B(1),[5] and 3B(2)[6] of the Code of Judicial *300 Conduct by his conduct, and the Commission found these violations by clear and convincing evidence. “Whether this behavior was actually willful is of no consequence” to the question of whether Judge Skinner violated the Constitution and the Code of Judicial Conduct, as even negligent or ignorant behavior may bring the judicial office into disrepute. Boykin, 763 So.2d at 875.
A. Whether Judge Skinner committed misconduct.
¶ 11. It is clear that Judge Skinner committed willful misconduct and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Judge Skinner recused himself from the aforementioned cases, then, with full knowledge that he was recused, reinserted himself and took further action in the cases. “It is fundamental that, once a recusal occurs, no judge may take further action in a case.” Osborne, 16 So.3d at 23. Having recused himself from a case, a judge has no more authority to take action in that case than does the ordinary citizen on the street. Furthermore, Judge Skinner abused the contempt power by issuing arrest warrants for indirect criminal contempt that led to the Coopers being held without bond for seventy-two hours without notice or a hearing. See Cooper Tire, 890 So.2d 859 (Miss.2004); see also In re E.K., 20 So.3d 1216 (Miss.2009) (discussing criminal and civil contempt in a case in which Judge Skinner was the trial judge); Miss. Comm’n on Judicial Performance v. Darby, 75 So.3d 1037 (Miss.2011) (discussing due process protections in connection with indirect criminal contempt). Both actions were done knowingly and with a knowledge of the impropriety of the actions; thus he knowingly misused the judicial office. Therefore, Judge Skinner violated Canons 1, 2A, 3B(1), and 3B(2) of the Code of Judicial Conduct and committed willful misconduct and conduct prejudicial to the administration of justice, bringing the judicial office into disrepute. See Osborne, 16 So.3d 16; Darby, 75 So.3d 1037; Miss. Comm’n on Judicial Performance v. Byers, 757 So.2d 961 (Miss.2000).
B. Whether the recommended sanction is appropriate.
¶ 12. The sanction in a judicial misconduct case should fit the offense. Boykin, 763 So.2d at 876. In the past, this Court has considered six factors to determine what sanction is appropriate. Boone, 60 So.3d at 185. Those factors are:
(1) the length and character of the judge’s public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating factors.
Boone, 60 So.3d at 185 (citing Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004), overruled on other grounds by Boone, 60 So.3d at 177). The primary purpose of sanctions is “to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses,” rather than punishment of the individual. Boone, 60 So.3d at 185 (internal quotations omitted).

1. The Length and Character of Judge Skinner’s Public Service

¶ 13. Judge Skinner was a Justice Court Judge for one term, then was elected as County Court Judge in 2006 and began his service in January of 2007. The *301 record is silent as to the character of his public service.

2. Prior Caselaw on Point

¶ 14. Several cases illustrate the impropriety of a judge acting in a case in which he is recused. In Osborne, Judge Osborne recused himself from the case of a minor due to the fact that he did not hear her attorney’s cases. Osborne, 16 So.3d at 18. After recusing himself, Judge Osborne appointed a special judge in the matter and then redetained the minor until a new hearing could be held. Id. In its analysis of the appropriate sanctions, this Court placed an emphasis on the fact that Judge Osborne recused himself, yet continued to take action in the matter, and the fact that this was his third disciplinary sanction imposed in five years. Id. at 25. Thus, the Court determined that the appropriate sanctions were removal from office and assessed costs in the amount of $1,389.69. Id. The Court emphasized that it is axiomatic that a judge must not take further action in a case in which he has been recused. Id. at 23.
¶ 15. In Roberts, Judge Roberts committed a variety of offenses in approximately eight separate cases, including one case in which he recused himself and then presided over a revocation hearing. Miss. Comm’n on Judicial Performance v. Roberts, 952 So.2d 934, 936-37 (Miss.2007). This Court noted that Judge Roberts’s actions involved procedural matters and ignorance of the law. Id. at 943. It also noted that this was the first formal complaint filed against Judge Roberts. Id. at 942. In that case, this Court imposed a public reprimand, a thirty-day suspension without pay, a $1,500 fine, and costs in the amount of $100. Id. at 943.
¶ 16. In Thompson, Judge Thompson “essentially” recused himself from a matter by telling a woman filing papers for an arrest warrant on her sister to take her grievance to another judge. Miss. Comm’n on Judicial Performance v. Thompson, 972 So.2d 582, 584 (Miss.2008), overruled on other grounds by Boone, 60 So.3d at 177. After “in essence” recusing himself, Judge Thompson (unsuccessfully) attempted to block the issuance of the arrest warrant by speaking with the issuing judge and by asking a deputy clerk not to send the warrant. Id. This Court noted that Judge Thompson “unquestionably interjected himself into a case (from which he had already in essence “recused” himself).” Id. at 587. However, Judge Thompson did not enter an order or preside over a hearing, or actually “take action” in the case, nor did he “formally” recuse himself. Nor did his actions actually prevent the warrant from issuing. This Court decided that the appropriate sanctions in the case were public reprimand and assessment of costs in the amount of $100. Id. at 590.
¶ 17. Further, ample caselaw addresses abuse of the contempt process. This Court has determined that the sanction of a public reprimand, a $500 fine, and $100 in costs was appropriate where a judge held a party in criminal contempt based on verbal, not written, instructions, and without affording her notice and without recus-ing herself from the contempt proceeding. Darby, 75 So.3d 1037. The Court noted that the misuse of the contempt power is prejudicial to the administration of justice and violates Canons 1, 2A, and 3B(2) of the Code of Judicial Conduct. Id. at 1043.
¶ 18. In Byers, this Court had strong words for a judge who abused the contempt process. Byers, 757 So.2d 961. Judge Byers had improperly imposed sentences and refused to correct her mistakes when confronted with them, had misrepresented her actions under oath, had improperly revoked probation, and had cited a *302 journalist for criminal contempt without using the correct procedural safeguards, that is, a specific charge, notice, and a hearing. Id. The Court found the abuse of contempt powers to be “the most troubling and serious of all the charges set out in the formal complaint.” Id. at 970. The Court found that Judge Byers “abused her powers when she used the incorrect procedures to hold [the journalist] in contempt and put [the journalist] in jail.” Id. at 972. The Court noted that this violated Canons 1, 2A, 3A(1), and 3B(1) of the Code of Judicial Conduct. Id. This Court emphasized that “the power to hold a person in contempt of court is a solemn responsibility, and any misuse of this power is a serious charge.” Id. at 973. The Court ultimately sanctioned Judge Byers to a public reprimand, a fine of $1,500, and costs in the amount of $2,023.59. Id. The Court also carefully considered removing Judge Byers from office, but, in deciding against removing her, noted that “Judge Byers has already been removed by the people of her electoral district” because she was defeated in her bid for re-election. Id.
¶ 19. Further, in a case in which the judge was provoked, yet held a contempt hearing without adequate notice and imposed a $500,000 bond for the contempt charge, this Court held that “despite the provocation,” the judge’s “misuse of the contempt power of the court was misconduct for which a sanction should ensue.” Miss. Comm’n on Judicial Performance v. Sanders, 749 So.2d 1062, 1069 (Miss.1999). Even “ignorance of the law of contempt is no excuse for a judicial officer.” Id. In Sanders, the Court also found that Judge Sanders improperly and illegally expunged two convictions. Id. at 1069-70. The Court ultimately determined that appropriate sanctions were public reprimand and assessment of court costs, noting that it rejected the Commission’s recommendation of a fine given the facts, including the provocation in the contempt issue. Id. at 1073.
¶ 20. Caselaw has made abundantly clear that both of Judge Skinner’s transgressions amount to misconduct. Both taking action in a case subsequent to recu-sal and abusing the contempt power by issuing bench warrants for contempt of court without proper procedural safeguards are clear violations of the Mississippi Constitution and the Code of Judicial Conduct.

3. Magnitude of Offense and Harm Suffered

¶ 21. As a result of Judge Skinner’s actions, Mrs. Cooper was arrested in the presence of her six minor children, who were then taken into DHS custody. The Commission asserts that the children were not returned to their mother’s custody for several months. Both the Coopers were incarcerated for seventy-two hours without notice or a hearing. It is undisputed and obvious that Judge Skinner deprived both Coopers of their due process rights. The record does not contain information regarding how many people learned or knew of Judge Skinner’s improper actions, but it can be inferred that several law enforcement officers knew of it, and thus could view the judiciary negatively.
A Pattern of Conduct
¶ 22. In the joint motion, the parties acknowledge that, as a result of prior complaints, Judge Skinner has incurred a private admonishment from the Commission as well as three (3) instances of informal admonitions. Included within one of Judge Skinner’s disciplinary files is discussion between the Commission and Judge Skinner as to whether he had recused himself in a case. Judge Skinner’s re *303 sponses to the Commission went into detail regarding Osborne and its holding that a judge’s recusal in a case precludes that judge from taking further action in that case, and was germane to the resolution of the complaint filed against him. The Commission characterized Judge Skinner’s pri- or disciplinary record as “dissimilar” from his actions in this case. That is not an accurate assessment. The record makes clear that Judge Skinner is well aware of the Osborne case and its mandate that a judge never participate in a case after he recuses himself. Because his history with the Commission demonstrates his clear awareness of the rules surrounding recu-sal, Judge Skinner certainly knew not to take action in the Cooper case subsequent to his recusal.

5. Moral Turpitude

¶ 23. The term moral turpitude is archaic and not easily applied. Indeed, as can be seen in the following discussion, this Court has been highly inconsistent in its application of the term moral turpitude.
¶ 24. The dictionary defines “moral turpitude” as “an act or behavior that gravely violates the moral sentiment or accepted moral standards of the community.” Webster’s 3rd New Int’l Dictionary 1469 (1961). Black’s Law Dictionary defines “moral turpitude” as “[cjonduct that is contrary to justice, honesty, or morality. In the area of legal ethics, offenses involving moral turpitude — such as fraud or breach of trust — traditionally make a person unfit to practice law. — Also termed moral depravity.” Black’s Law Dictionary 1030-31 (8th ed.2004).
¶ 25. This Court’s analysis of “moral turpitude” has varied somewhat over the years. This Court noted that “[mjoral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.” Gibson, 883 So.2d at 1158 n. 2. It has further expanded this definition to note that moral turpitude may involve “some of the basic tenets of daily living in a civil society, such as living by standards of fundamental decency and honesty by not abusing the judicial process, and by revering the law and the judicial system, and upholding the dignity and respect of the judiciary through appropriate conduct and behavior toward others.” Sanford, 941 So.2d at 217. This Court has further stated that “[t]he bottom line of this element is that we must determine whether a judge’s conduct crosses the line from simple negligence or mistake to willful conduct which takes advantage of a judge’s position for greed or other inappropriate motives. If the conduct willfully subverts justice, more punishment is warranted.” Miss. Comm’n on Judicial Performance v. Gordon, 955 So.2d 300, 305 (Miss.2007).
¶ 26. This standard has been the source of much disagreement in its interpretation and application. Furthermore, the cases for which moral turpitude is or is not found vary widely. A survey of judicial misconduct cases from 2011 to the present in which moral turpitude is discussed illustrates this point. See, e.g., Miss. Comm’n on Judicial Performance v. Carver, 107 So.3d 964, 975 (Miss.2013) (Court found moral turpitude in conduct involving improper dismissal of charges, ex parte communications, and ticket-fixing, noting that ticket-fixing implicates moral turpitude); Miss. Comm’n on Judicial Performance v. Thompson, 80 So.3d 86 (Miss.2012) (Court found moral turpitude where Judge Thompson had involved himself in criminal investigations on matters not before him, engaged in ex parte communications, interfered in cases before another judge, and *304 improperly dismissed cases); Miss. Comm’n on Judicial Performance v. Dearman, 73 So.3d 1140 (Miss.2011) (Dearman II) (Court found no moral turpitude where Judge Dearman called another judge and attempted to influence a case involving her personal friend); Miss. Comm’n on Judicial Performance v. Bustin, 71 So.3d 598 (Miss.2011). (Court found that moral turpitude was involved where a judge signed an arrest warrant based on the ex parte affidavit of her own client in a divorce case, and the warrant was for her client’s ex-husband, because Judge Bustin “interfered with the administration of justice”); Miss. Comm’n on Judicial Performance v. McGee, 71 So.3d 578 (Miss.2011) (Court found moral turpitude where Judge McGee interfered in the criminal prosecution against someone who had committed a crime against his relative); Miss. Comm’n on Judicial Performance v. McKenzie, 63 So.3d 1219 (Miss.2011) (Court found moral turpitude where judge was accused of, inter alia, ticket-fixing, ex parte communications, and interference in another judge’s cases, noting that “[t]icket-flxing willfully subverts justice”); Miss. Comm’n on Judicial Performance v. Dearman, 66 So.3d 112 (Miss.2011) (Dearman I) (finding no moral turpitude where Judge Dearman, inter alia, improperly changed bonds, presided over a portion of her nephew’s case, and engaged in ex parte communications); Miss. Comm’n on Judicial Performance v. Littlejohn, 62 So.3d 968 (Miss.2011) (Finding no moral turpitude where Judge Little-john abused his contempt powers by holding an attorney in contempt of court for failure to recite the Pledge of Allegiance in open court, in violation of the attorney’s First Amendment rights, “because Judge Littlejohn did not misuse the legal system in a way that violates fundamental decency and honesty, nor did his conduct involve fraud, misrepresentation, extortion, or other similar conduct”); Boone, 60 So.3d 172 (Court found moral turpitude where Judge Boone engaged in ex parte communications, inappropriately reduced a fíne, and lied to the Commission investigator). Thus, similar cases have incurred inconsistent applications of the moral turpitude standard. For example, in Dearman II, no moral turpitude was found where Judge Dearman actually presided over a family member’s case, reduced bonds, and engaged in ex parte contacts, and in Dear-man I, no moral turpitude was found where Judge Dearman attempted to influence the case of a personal friend, yet in McGee, the interference in a case involving the judge’s relative amounted to moral turpitude. Further, in Bustin, moral turpitude was found where Judge Bustin signed an arrest warrant based on the ex parte affidavit of an ex-client, and in Thompson, interference with cases not before him and ex parte contacts warranted a finding of moral turpitude.
¶ 27. In addition to varying applications of the standard, the term “moral turpitude” has caused much disagreement among the individual justices of this Court, as well as between the Commission and the Court. For example, in Mississippi Commission on Judicial Performance v. Smith, 78 So.3d 889 (Miss.2011), a very divided Court determined that Judge Smith’s actions of abusing “the judicial process by incarcerating and threatening to incarcerate individuals for contempt without providing them basic due process rights” constituted moral turpitude. Id. at 895; cf. Littlejohn, 62 So.3d 968 (abuse of the contempt process in violation of fundamental First Amendment rights did not implicate moral turpitude); Darby, 75 So.3d 1037 (abuse of contempt process by failing to afford basic due process rights did not implicate moral turpitude). Justice Randolph concurred in part and in result, rejecting the finding that Judge Smith’s *305 acts involved moral turpitude. Smith, 78 So.3d at 897 (Randolph, J., concurring in part and in result). He emphasized that moral turpitude must involve some immorality[7] and noted that he discerned “no evidence of deceit, fraud, extortion, trickery, monetary gain or any other indicia of conduct which involved Judge Smith using his position ‘for greed or other inappropriate motives!,]’ so as to support a finding of moral turpitude.” Id. However, Justice Randolph concluded that the absence of moral turpitude did not alter his agreement with the recommended sanction. Id. Justice Kitchens dissented, opining that Judge Smith did not commit judicial misconduct. Id. at 897 (Kitchens, J., dissenting).
¶ 28. In Darby, this Court found that Judge Darby abused her contempt powers. Darby, 75 So.3d at 1042-43. The Commission argued that Judge Darby’s actions involved moral turpitude because she “abused the judicial process by incarcerating an individual for indirect criminal contempt without providing her with the basic rights of due process thereby constituting moral turpitude.” Id. at 1044. The Court disagreed with the Commission and found that Judge Darby’s actions did not involve “interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.” Id. The Court found that Judge Darby’s conduct did not rise to the level of moral turpitude, but the absence of such did not alter the Court’s agreement with the recommended sanction. Id.
¶ 29. In Mississippi Commission on Judicial Performance v. Cowart, 71 So.3d 590 (Miss.2011), the Court found that moral turpitude existed where Judge Cowart engaged in ex parte communications, let her personal relationship with a defendant influence her conduct, and tried to use her position to help the same defendant. Justice Kitchens concurred in part and in result, opining that Judge Cowart’s behavior did not involve moral turpitude, because her actions did “not amount to ‘shameful wickedness so extreme a departure from ordinary standards of honesty, good morals, justice or ethics as to be shocking to the moral sense of the community.’ ” Id. at 597 (Kitchens, J., concurring in part and in result). However, regardless of disagreeing with the finding of moral turpitude, Justice Kitchens agreed with the sanction imposed by the majority. Id.
¶ 30. In Mississippi Commission on Judicial Performance v. Patton, 57 So.3d 626 (Miss.2011), the majority found moral turpitude existed where Judge Patton “wrongfully incarcerat[ed] litigants, en-gag[ed] in ex parte communications, fail[ed] to give notice of hearings and orders, publicly commented] on a pending case, and improperly issu[ed] a search warrant in a civil case.” Id. at 633. The Court noted that Judge Patton’s actions involved moral turpitude because he “abused the judicial process and failed to revere the law and judicial system.” Id. Justice Kitchens wrote separately, disagreeing that moral turpitude was in *306 volved. He stated that “[m]oral turpitude is a notoriously undefined term of art, and our decisions do not shed much light on its meaning.” Id. at 635 (Kitchens, J., concurring in part and dissenting in part). Justice Kitchens surveyed some of the law on moral turpitude, and concluded that a finding must result only from a finding of inappropriate motives. Id. at 635-36. Justice Kitchens opined that the premise behind “moral turpitude” is “that some wrongful acts by judges, committed in furtherance of their private interests, are so repugnant to the basic standards of social expectations that we must condemn and punish them more harshly than we would condemn and punish other wrongful acts.” Id. at 637.
¶ 31. As illustrated by the inconsistent applications of this factor in the above opinions, and as highlighted by the fact that disagreement over the finding of moral turpitude rarely results in ultimate disagreement over the appropriate sanction,[8] the interpretation of “moral turpitude” proves confusing and difficult to apply. Several states have adopted factors to guide the determination of sanctions for judicial misconduct. See Cynthia Gray, American Judicature Society: A Study of State Judicial Discipline Sanctions (2002) (iavailable from https://www.ajs.org/) (hereinafter “AJS Study ”). For example, the Washington Supreme Court reviews ten nonexclusive factors to determine the appropriate sanction in judicial misconduct cases. In re Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987). The factor roughly equivalent to “moral turpitude” is “the extent to which the judge exploited his position to satisfy his personal desires.” Id.[9] Other Supreme Courts have adopted the Deming factors. See, e.g., Ark. Judicial Discipline and Disability Comm’n v. Proctor, 2010 Ark. 38, 360 S.W.3d 61, 95-96 (2010); In re Chaisson, 549 So.2d 259, 266 (La.1989). Michigan likewise examines several factors to determine appropriate judicial sanctions. The factor similar to moral turpitude used by Michigan is that “misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated.” In re Brown, 464 Mich. 135, 626 N.W.2d 403, 405 (2001).
¶ 32. In an effort to clarify the standard by which we determine the appropriate sanction in a judicial misconduct case, this Court modifies Gibson and its progeny to the extent that Mississippi law considers “moral turpitude” as a factor in determining the appropriateness of sanctions. Instead, this Court will examine the extent to which the conduct was willful, and the extent to which the conduct exploited the judge’s position to satisfy his or her personal desires or was intended to deprive the public of assets or funds rightfully belonging to it.[10] In examining the *307 extent to which the conduct was willful, we will examine “whether the judge acted in bad faith, good faith, intentionally, knowingly, or negligently.” In re Coffey’s Case, 157 N.H. 156, 949 A.2d 102, 115 (2008) (quoting AJS Study). “[Misconduct that is the result of deliberation is generally more serious than that of a spontaneous nature.” In re Coffey’s Case, 949 A.2d at 115-16. For example, spontaneous conduct, such as provoked conduct, may fall on one end of the spectrum, and may indicate a lesser sanction. Planned, premeditated conduct may fall on the opposite end of the spectrum, indicating the appropriateness of a harsher sanction. Conduct that is knowing and/or deliberate, but not the result of premeditation, may fall between spontaneous and premeditated conduct. . Certainly, the analysis of the extent of willfulness will allow for consideration of acts of dishonesty. Furthermore, the inappropriateness of the action may also be considered under the aggravating circumstances factor. When analyzing the extent to which the conduct exploited the judge’s position to satisfy personal desires, we will examine factors such as whether the judge received money, received favors, or otherwise acted in a manner indicative of any improper personal motivation.
¶ 38. Under the new standard, in examining the extent to which Judge Skinner’s actions were willful, the record certainly indicates that Judge Skinner’s actions were done with knowledge that they were wrong. He was aware, or should have been aware, of the due process protections a contempt charge carries, and he was aware of the fundamental principle that, once recused, a judge must not take further action in a case. Judge Skinner’s actions certainly were not the product of provocation or a spontaneous decision, as he had time to hear from law enforcement and consider probable cause. Thus, his conduct was deliberate; however, the record contains no evidence of any premeditation. Further, the record contains no evidence that Judge Skinner’s conduct was done to satisfy any personal desires, and the record does not indicate that Judge Skinner personally gained in any way from his actions.

6. Mitigating or Aggravating Circumstances

¶ 34. A mitigating factor in this case is the fact that Judge Skinner has agreed that his actions were improper and has entered into an Agreed Statement and Joint Motion with the Commission without the requirement of a hearing. Thompson, 80 So.3d at 94. However, Judge Skinner does have a prior disciplinary history with the Commission, including an interaction that made him well aware of the dictates of Osborne and its holding that, having re-cused in a case, a judge is prohibited from taking any further action in that case. Additionally, it is particularly troubling that Judge Skinner knowingly violated some of the most basic and easily understood judicial standards. A judge should never take action in a case after he is recused, and the due process protections provided in contempt cases are clear. Thus, “to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses,” *308 this Court finds the appropriate sanction to be and imposes a sanction of a public reprimand, thirty days’ suspension without pay, a $1,000 fine, and $100 in costs. This is in line with the caselaw regarding similar offenses.

CONCLUSION

¶ 35. Judge Skinner clearly committed judicial misconduct in violation of the Constitution and the Code of Judicial Conduct. However, the sanctions proposed by the Commission are inadequate given the nature of the misconduct. Thus, this Court imposes the sanction of a public reprimand, a thirty-day suspension without pay, a $1,000 fine, and $100 in costs.
¶ 36. The Clerk of this Court shall send copies of this opinion and the mandate of this Court to the Circuit Clerk of Hinds County, the County Administrator of Hinds County, and the Hinds County Board of Supervisors.
¶ 37. HINDS COUNTY COURT JUDGE WILLIAM L. SKINNER, II SHALL BE SUSPENDED FROM OFFICE FOR A PERIOD OF THIRTY (30) DAYS WITHOUT PAY, EFFECTIVE ON THE DATE OF ISSUANCE OF THIS COURT’S MANDATE, PUBLICLY REPRIMANDED, FINED $1000, AND ASSESSED COSTS OF $100. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE HINDS COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE SKINNER IN ATTENDANCE.
RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J. WALLER, C.J., NOT PARTICIPATING.

. We have changed the family’s surname to protect the identities of the minor children involved.

. The Commission is placed on notice that this Court would find it beneficial to include in the record of all judicial misconduct cases all information the Commission considered in reaching its recommendation, as well as the complete history of the individual with the Commission, given this Court’s responsibility to make the ultimate determination regarding sanctions.

. Canon 1 instructs that judges “should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.” Code of Judicial Conduct Canon 1.

. Canon 2A mandates that judges "respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Code of Judicial Conduct Canon 2A.

. Canon 3B(1) requires that judges decide all assigned matters "except those in which disqualification is required.” Code of Judicial Conduct Canon 3B(1).

. Canon 3B(2) establishes that judges “shall be faithful to the law and maintain professional competence in it.” Code of Judicial Conduct Canon 3B(2). It also requires that a *300 judge not be “swayed by partisan interests, public clamor, or fear of criticism.” Id.

. Justice Randolph’s assertion is supported by several cases, including Roberts. This Court stated that "an action must involve some immorality to rise to the level of moral turpitude." Roberts, 952 So.2d at 942. "Further, actions involving interference with the administration of justice or which bring the judiciary into disrepute do not necessarily include moral turpitude. If they did, then this Court would have to make a finding of moral turpitude every time it found that a judge should be reprimanded.” Id. The Court also noted that "willful misconduct can, but does not always, include moral turpitude.” Id. (emphasis in original). The Court concluded that "actions involving procedural matters and/or ignorance of the law do not necessarily rise to the level of moral turpitude." Id. at 943.

. See Smith, 78 So.3d at 897; Darby, 75 So.3d at 1044; Cowart, 71 So.3d at 597.

. The other factors are similar to those this Court considers, and are: "(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge’s official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; [and] (i) the effect the misconduct has upon the integrity of and respect for the judiciary[.]” In re Deming, 736 P.2d at 659.

.For example, we have consistently held that ticket-fixing implicates moral turpitude, regardless of whether the judge personally gained from it. Ticket-fixing deprives the public of funds rightfully due to the government. Under the new standard, ticket-fixing *307 will still implicate an enhanced punishment. We note that many other concerns that this Court used to consider under the "moral turpitude” factor may still be considered under the factors considering the "magnitude of the offense and harm suffered” and "mitigating and aggravating circumstances." Thus, concerning behavior can always be articulated and considered under these factors to enhance punishment. Our purpose in replacing the "moral turpitude” factor is to allow for clarity and consistency in what has been a confusing and inconsistently applied standard.