KING, PRESIDING JUSTICE, FOR THE COURT: .
¶ 1. The Mississippi Commission" on Judicial Performance charges Montgomery County Justice Court Judge Keith Stokes Roberts with misconduct for failing to follow the law in a case before him. Because we find that Judge Roberts committed judicial misconduct and we agree that the recommended sanctions are appropriate, we order that Judge Roberts be publicly reprimanded, fined $3,000, and taxed with the costs of these proceedings.
FACTS AND PROCEDURAL HISTORY
¶ 2. On November 3, 2014, Rebecca Herring brought for hearing before Judge Roberts a claim that Marci Gastineau had given her . a rent check in the amount of $450 that was returned due to insufficient funds. Herring prayed for monetary damages in the amount of $546.50. Gastineau failed to appear and defend the case despite receiving the summons posted on her door,[1] so Judge Roberts continued the case until November 17, -2014. Gastineau was not notified of the new hearing date and again failed to appear, so Herring requests ed a default judgment.
¶ 3. After talking with Herring and looking at the documents she presented, Judge Roberts suggested that she amend her complaint to $3,500 (the jurisdictional limit of the court) plus costs. Herring made such a motion and Judge Roberts entered a default judgment against Gastineau in the amount of $3,564. Judge Roberts then suggested that Herring move to amend her complaint to include an eviction,’ and explained to her his belief that she needed an eviction for the constable to put her in legal possession of the property. Herring made such a motion, and Judge Roberts ordered an immediate eviction.
¶ 4. On June 29, 2015, following an investigation of the matter, the Commission filed a formal complaint against Judge Roberts charging him with violating Canons 1, 2A, 2B, 3B(2), 3B(8), and 3C(1) of the Mississippi Code of Judicial Conduct, which violates Section 177A of the Mississippi Constitution of 1890, “as said conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice "which brings the judicial office into disrepute.” Judge Roberts filed a Motion to Dismiss and a Motion to Recuse two judges from the hearing panel.- The Commission denied both motions and a formal *942 hearing was held on March 31, 2016, before-a three-judge committee.
¶5, On May 17, 2016, the Committee filed'its Findings of-Fact, Conclusions of Law, and Recommendation. The Committee found that- clear and convincing evidence existed that Judge Robert’s conduct violated Canons 1, 2A, 3B(2), 3B(8), and 3C(1) of the Code of Judicial Conduct. The Committee recommended that Judge Roberts be publicly reprimanded,- fined $3,000, and assessed all costs of the proceeding. Judge Roberts filed his objection to the Committee’s findings and recommendation on May 31, 2016. Thereafter, the Commission unanimously adopted the Committee’s findings and recommendation.
¶6. The Commission found that Judge Roberts had committed misconduct by: (1) failing in his administrative duties by not directing the Clerk to issue process for the reset hearing date and ensuring that Gas-tineau received notice of the reset hearing date, (2) failing to give notice to Gastineau that she would face an‘eviction and a 700 percent increase in the amount of the judgment against her, (3) granting unrequested relief by evicting Gastineau,. (4) acting, with ignorance or disregard for any applicable rule of law, (5) entering an unsupported judgment, in favor of Herring which caused direct harm to Gastineau, and (6) giving legal advice to Herring that directly harmed Gastineau. The Commission recommends to this Court that we order that Judge Roberts be publicly reprimanded, fined $3,000, and taxed with the costs of these, proceedings in the amount of $2,381.34.
¶ 7. Judge Roberts objects on multiple grounds: 1) that the Commission violated Rule 6(C) of the Rules of the Mississippi Commission on Judicial Performance, 2) that his due process rights were violated, 3) that Rule 2 applies in that he applied his understanding of the law, 4) that he was not required to renotice Gastineau, 5) that the Commission withheld exculpatory evidence and made its decision to initiate a Formal Complaint without said evidence, and 6) that-the sanctions are inappropriate.
ANALYSIS
 ¶ 8. The Mississippi Constitution grants this Court the power to impose sanctions for willful judicial misconduct “[o]n recommendation of the commission on judicial performance.” Miss. Const. art. 6, § 177A. When reviewing a judicial performance case, we conduct “an independent inquiry of the record before making a ‘final determination of. the appropriate action to be taken in each case[.]’” Miss. Comm’n on Judicial Performance v. Shoemake, 191 So.3d 1211, 1216 (Miss. 2016) (quoting Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss. 2011)). That said, we give careful consideration to the Commission’s findings of fact and recommendations, but we are not bound by them. Shoemake, 191 So.3d at 1216 (citing Miss. Comm’n on Judicial Performance v. Skinner, 119 So.3d 294, 299 (Miss. 2013)).
¶ 9. To impose sanctions, we must find “clear and convincing evidence of misconduct. Shoemake, 191 So.3d at 1216 (internal quotations omitted), “Willful misconduct in office includes the improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith.” Miss. Comm’n on Judicial Performance v. Skinner, 119 So.3d 294, 299 (Miss. 2013) (internal quotations omitted). Bad faith may be found where there exists “specific-intent to use the powers of the judicial office to accomplish a purpose which- the judge knew or should have known was beyond the legitimate exercise of. his authority.” Id. (internal quotations *943 omitted). While “[wjillful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disreputef,] ... [a] judge may also bring the judicial office into disrepute through negligence, ignorance, or incompetence not amounting to bad faith.” Id. (internal quotations and citations omitted). “This Court can generally recognize examples of such conduct when presented before the Court,” Id. (internal quotations and alterations omitted).

1. Whether the Commission violated Rule 6(C).

¶ 10. Rule 6(C) of the Rules of the Mississippi Commission on Judicial Performance provides that “[t]he formal complaint shall identify any complainant.” Judge Roberts argues that “any complainant” means that, for a formal complaint to be valid, it must identify a complainant. Yet the modification of “complainant” with “any” indicates that a specific complainant should be identified only if a sworn complainant exists. This is bolstered by other •Rules of the Mississippi Commission on Judicial Performance. Rule 5(A) provides that
Upon receipt of proper information regarding a judge’s conduct or physical or mental condition, the Commission shall initiate a confidential inquiry to determine whether the matter is within the Commission’s jurisdiction. On its own motion, the Commission may make inquiry concerning a judge’s conduct or physical or mental condition, and may file a formal complaint based upon the results of such inquiry on its own motion.
¶ 11. Rule 5(D) provides that
If the initial complaint is not dismissed, the complainant shall be asked to file a detailed, signed, sworn complaint against the judge .... A sworn complaint may be -waived by a two-thirds vote of the Commission; a sworn complaint shall not be required in an inquiry initiated by the Commission on its:own motion..
In this case, the Commission’s investigator received an anonymous tip and brought the information to the Commission. As reflected in the Commission’s minutes, the Commission on its own motion initiated an inquiry and investigation, and thereafter on its own motion filed a formal complaint. Because the Commission initiated the inquiry and filed the formal complaints on its own motion, a sworn complaint identifying a complainant was not required.

2. Whether Judge Roberts’s due process rights were violated.

¶ 12. At a meeting of the Commission, after being presented with the results of the investigation of Judge Roberts’s conduct,''one judge moved to file a formal complaint against Judge Roberts and another judge moved to second the motion. Judge Roberts moved to recuse these two judges, arguing that they became an arm of the prosecution and had personal knowledge due to the motions made. The judges declined to recuse, and Judge Roberts argues that this violated his due process rights.' The combination ' of investigative, prosecutorial, and adjudicatory functions in the Commission does not in and of itself violate due process. Miss. Comm’n of Judicial Performance v. Russell, 691 So.2d 929, 945-47 (Miss. 1997). “The processes of the Commission do not in and of themselves appear to present an unacceptable-risk of bias,” Id. at 946. And Judge Roberts presents no evidence of actual bias, beyond a vague assertion that the two judges had “been privy to information and ha[d] personal knowledge of the matter that could interfere with their ability to be impartial” because they had been . the members who moved to file a Formal *944 Complaint. This claim of bias is tenuous, at best. “Moreover, the conclusions of the Commission are merely recommendations to this Court and thus have no binding effect. Rather, this Court conducts de novo review of judicial misconduct proceedings and is the final arbiter of these matters.” Id. at 947.

3. Whether Rule 2 of the Rules of the Mississippi Commission of Judicial Performance applies.

¶ 13. Rule 2 provides that “[i]n the absence of fraud, corrupt motive, or bad faith, the Commission shall not consider allegations against a judge for making findings of fact, reaching a legal conclusion, or applying the law as he understands it.” Uniform Justice Court Rule 2.12 provides that “[a] judgment by default shall not be different in kind from or exceed an amount which was demanded in the complaint.” Judge Roberts issued a default judgment that differed both in kind and exceeded an amount demanded in the complaint. The complaint was for a bad check fee and demanded $546.50. The default judgment granted Herring $3,564 (an amount exceeding that demanded in the complaint) and an eviction (a judgment different in kind from that demanded in the complaint). Judge Roberts argued that he believed that he was adjudicating an eviction claim, and thus, he was applying the law as he understood it.
¶ 14. However, Judge Roberts, by his own admission, knew he was adjudicating a bad check claim. Moreover, even if we did give credence to Judge Roberts’s feeble assertions that he thought he was adjudicating an eviction claim, Rule 2 is not a defense, as he clearly should have known that he was adjudicating a bad check claim.
¶ 15. Judge Roberts testified regarding suggesting to Herring that she amend her complaint:
JUDGE ROBERTS: ... And I asked her—I said, “The Court cannot act on its own.” I asked her, “Did I hear a motion?” She made a motion and I sustained her motion and then—
Q. Excuse me. Let me stop you. She made a motion to do what?
A. To amend her complaint to the jurisdictional limit of Justice Court.
Q. All right. Is that the conclusion of your answer?
A. No, ma’am. I passed the folder to Ms. Kelli Tate and I sustained her motion and told her—
On that motion I said, “Now, if you’re going to legally be in possession of your house, the constable has to put you back in possession,” which is what she told me she wanted.
And I asked her again, “Did I hear a motion?” She made a motion and I sustained it.
Q. A motion to do what?
A. A motion for an immediate eviction.
It defies logic that Judge Roberts would ask Herring to move to amend her complaint on a bad check to add an eviction if he “mistakenly” thought he was proceeding on an eviction claim the entire time.[2] He was later asked the question “Did you hear Ms. Herring say that she never asked you for an eviction?” and responded “She made statements and I told her that I would have to have a motion.” Additionally, the court order signed by Judge Roberts states in handwritten form: “oral mo *945 tion of plaintiff to amend $3,500 plus 64.00 court cost motion sustained!!.] Immediate eviction granted by the court.”[3]
¶ 16. Kelli Tate, the deputy clerk taking notes in the courtroom that day, also testified that Judge Roberts asked for a motion:
MS. TATE: ... At that time, Ms. Herring then stated that her check was for—it was for rent. The bad check was for rent. At that point in time, Judge Roberts then stated, he said:
“The max amount we can do in Justice Court is for $3,500. Do I hear a motion?”
Ms. Herring, at that point in time, she kind of looked confused as if she didn’t know and she looked over at me. I dropped my head. I can’t give any kind of—shake my head “yes” or “no,” nothing.
At that point in time, Judge Roberts then stated again, “$3,500 is the max amount we can do in Justice Court. Do I hear a motion?” And Ms. Herring then stated, “yes.”
And then he gave her—Judge Roberts gave her judgment for $3,500 and an immediate eviction.
Upon further testimony, she stated that “Well, at that time, I think Judge Roberts asked if she wanted an eviction and she said, yes, and he granted her immediate eviction.”
¶ 17. Judge Roberts also testified that he read the complaint aloud in court at the beginning of the proceeding. The complaint has the word “complaint” at the top, followed by the Defendant’s address, then states:
2. My complaint is based on the following facts:
return check 450.00
late fee 25.00
bank fee 7.50
3.1 seek the following relief:
$482.50—Complaint
$64.00—Court Cost
$546.50—Total
Nothing in the complaint mentions eviction.
¶ 18. It is simply not credible under these circumstances that Judge Roberts mistakenly believed he was adjudicating an eviction claim. It is clear that Judge Roberts was adjudicating a complaint for a bad check, and knew as much. Moreover, Rule 2 prevents a judge from being sanctioned for applying the law as he understands it in the absence of bad faith, which is defined as a “specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercises of his authority.” Miss. Comm’n of Judicial Performance v. Russell, 691 So.2d 929, 936 (Miss. 1997) (internal quotations omitted) (emphasis added). It is beyond the pale that Judge Roberts should have known that his actions amending the complaint and ordering an eviction were beyond the legitimate exercises of his authority.[4] The clear and convincing evidence establishes that Judge Roberts misapplied the law by failing to give notice of an eviction and increase in the amount of judgment, granting unrequested relief, entering an unsupported judgment,[5] and dis *946 regarding applicable rules of law, and that his conduct rose to the level of bad faith; therefore, he violated the Code of Judicial Conduct.[6]
¶ 19. The caselaw addressing Rule 2 supports the notion that it may not be used in the face of such egregious mistakes. In Mississippi Commission on Judicial Performance v. Smith, Judge Smith was accused of judicial misconduct for knowingly dismissing or remanding to the file cases in which defendants made deals to avoid prosecution in exchange for a payment into a “drug fund.” Miss. Comm’n on Judicial Performance v. Smith, 109 So.3d 95, 96 (Miss. 2013). Judge Smith raised Rule 2 as a defense, arguing that he committed no fraud, possessed ho corrupt motive, and did'not act in bad faith. The 'Court rejected this argument, noting that a judge may behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute though negligence or ignorance. Id. at 98-99. It also noted that “[t]his Court can recognize generally an example of willful misconduct presented for review, without a detailed discussion of each Canon, violated.” Id. at 99.
¶ 20. When Judge Lewis refused to return a handgun to the accused in contravention of the law, he also claimed that the Commission lacked jurisdiction under Rule 2. Miss. Comm’n on Judicial Performance v. Lewis, 830 So.2d 1138 (Miss. 2002). Judge Lewis argued that “he was simply interpreting the law as it applied to the ease.” Id. at 1140-41. The Court found his argument to be without merit, noting that Rule 2 is inapplicable when a “judge should have been aware that his actions were prohibited.” Id. at 1141.
¶ 21. In Mississippi Commission on Judicial Performance v. Russell, the Court likewise found that Rule 2 was inapplicable. Miss. Comm’n on Judicial Performance v. Russell, 691 So.2d 929 (Miss. 1997). Judge Russell had released four prisoners *947 after they had been sentenced, without authority do so. Id. Judge Russell argued “that at all relevant times he did not act in bad faith because he applied the law as he understood it.” Id. at 936. The Court found that the legal authority was clear, and thus Judge Roberts should have been aware that he exceeded his legal authority; it therefore declined to apply Rule 2, finding ample evidence of bad faith. Id.
¶ 22. Last, Judge Dodds asserted Rule 2 as a defense in a case in which he improperly issued a temporary restraining order (TRO) against a pastor, had the pastor arrested pursuant to the TRO, and responded personally to .an incident at the church. Miss. Comm’n on Judicial Performance v. Dodds, 680 So.2d 180 (Miss. 1996). Judge Dodd stated that his mistakes were “due to errors of judgment, lack of diligence and misinterpretation of the law,” but were not based on fraud, corrupt motive, or bad faith. Id. at 192. The Court found his argument to be without merit. Id. It found that “Dodds should have known the limits of his authority.” Id.
¶ 23. Judge Roberts’s statements that he believed he was adjudicating an eviction matter lack credibility. But even if his explanation was credible, the record unequivocally establishes that Judge Roberts should have known the limits of his legal authority. Therefore, Rule 2 is inapplicable, and Judge Roberts clearly committed judicial misconduct.

4, Whether Judge Roberts had a duty to renotice Gastineau.

¶ 24. It is undisputed, that Gasti-neau received notice of the November 3 hearing date. For Judge Roberts to have committed judicial misconduct, we must first find that service .of, process was required to be reissued after the hearing was continued.
¶25. In McCormick Motor Car Co. v. McDonald, this Court addressed whether a default judgment entered by a justice of the peace was void because the initial hearing date, at which neither party appeared, was “not a regular day for the justice of the peace ... to hold his court.” McCormick Motor Car Co. v. McDonald, 163 Miss. 409, 121 So. 121, 122 (1929). Both parties were properly summoned for such date, neither appeared, and the cause was continued. Id. Only the plaintiff appeared on the date to which the cause was continued. Id. The Court held that “[a]s this order of continuance was entered oh the day on which he was summoned to appear, he must be treated as having had due notice of the continuance of the cause[.]” Id. at 123.
¶ 26. Judge Roberts entered an order of continuance on November 3, 2014—-the date when Gastineau was summoned to appear—so we find she “must be treated as having due notice of the case,” We also note, that, while justice courts are not subject to the Mississippi Rules of Civil Procedure, matters requiring a Rule 81 summons which are “not heard on the day set for hearing ... may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent.” M.R.C.P. 81(d)(6). In the absence of a rule, stating otherwise, we will, not sanction a justice court judge for conduct approyed for other judges, We find that. Judge Roberts did not commit misconduct by failing to have service of process reissued.[7]

*948
5. Whether Judge Roberts improperly gave legal advice.

¶27. Clear and convincing evidence exists that Judge Roberts gave Herring legal advice. Several witnesses, including Judge Roberts himself, indicated that he strongly and inappropriately suggested that Herring amend her complaint up to the jurisdictional monetary limit, although the record indicates that no proof of damages in that amount was presented. Moreover, his own testimony indicated that he advised Herring that she needed to move to amend her complaint to add an eviction claim in order for her to be in legal possession of her property. He informed her that the constable had to formally evict the tenant, stating by his own admission that he said “Now, if you’re going to legally be in possession of your house, the constable has to put you back in possession .... Did I hear a motion?” Consequently, Judge Roberts’s actions in this context also rise to the level of judicial misconduct.

6. Whether the Commission withheld exculpatory evidence.

¶ 28. In the hearing before the Commission, the Commission’s investigator claimed that he got no information of substance from Herring, because she did not want to speak with him. Herring, while admitting that she refused to go to the sheriffs office because her hip hurt and she refused to allow the investigator to interview her at her home because she did not want to get dressed, stated that she told the investigator “basically what I’ve told y’all today.” Judge Roberts claims that it is a fact that Herring gave the investigator “the whole story” and that the investigator misrepresented the truth, and thus, exculpatory evidence was withheld. At essence, this objection boils down to a credibility issue. The question is whether Herring is more credible when she says she told Stokes the whole story, or Stokes is more credible when he says he did not get anything of substance from the conversation. This Court, in its independent review of the record, will “accord careful consideration [of] the findings of fact and recommendations of the Commission ... which has had the opportunity to observe the demeanor of the witnesses.” Mississippi Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss. 2011). The Commission clearly found the investigator’s testimony more credible.
¶ 29. Moreover, the evidence at issue is not actually exculpatory. While Herring’s testimony differed slightly from Tate’s and Judge Roberts’s, at its heart, she testified that Judge Roberts suggested that she amend her complaint. She also testified that she did not ask for an eviction because she knew that Gastineau had already vacated her property. She stated that “I just remember that [Judge Roberts] said he was going to grant [an eviction] and put me back into possession of my house[,]” while admitting that she did not ask for an eviction in her initial complaint. Her testimony confirms the heart of Judge Roberts’s misconduct, and is not exculpatory.

7.Whether the sanctions are appropriate.

¶ 30. The Commission recommends that Judge Roberts be publicly reprimanded, fined the sum of $3,000, and ordered to pay the costs of the proceedings in the amount of $2,381.34. When implementing sanctions against judges, we are cognizant that the “primary purpose of sanctions is to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses, rather than punishment of the individual.” Shoemake, 191 So.3d at 1221 (internal quotations omitted). “The official integrity *949 of the justice court judges is vitally important, for it is on that level that most citizens have their only experience with the judiciary.... Therefore, it is imperative for justice court judges to conduct themselves with the utmost diligence in order to uphold the public’s confidence.” Miss. Comm’n on Judicial Performance v. Guest, 717 So.2d 325, 329 (Miss. 1998) (internal quotations and citations omitted).
¶ 31. To determine appropriate sanctions, this Court must consider:
(1) the length and character of the judge’s public service;
(2) whether there is any prior caselaw on point;
(3) the magnitude of the offense and the harm suffered;
(4) whether the misconduct is an isolated incident or evidences a pattern of conduct;
(5) the extent to which the conduct was willful, and the extent to which the conduct exploited the judge’s position to satisfy his or her personal desires or was intended to deprive the public of assets or funds rightfully belonging to it;
(6) the presence or absence of mitigating or aggravating factors.

Id.

a.Length and Character of Public Service

¶ 32. Judge Roberts was elected to the position of justice court judge in November 2005, and has held that position ever since. The Commission has dismissed three informal complaints against Judge Roberts and has cautioned him each time. On August 31, 2009, Judge Roberts was cautioned about engaging in ex parte communications. On August 11, 2014, Judge Roberts was cautioned regarding expungement procedures. On June 16, 2015, Judge Roberts was cautioned regarding issuance of an arrest warrant for the Montgomery County Sheriff. This case is the first Formal Complaint filed against Judge Roberts.

b. Prior Caselaw on Point

¶ 33. While no caselaw directly on point exists, this Court has made clear that abuse of process, failure to follow statutory dictates, and procedural errors are sanctionable. Miss. Comm’n on Judicial Performance v. Thompson, 80 So.3d 86 (Miss. 2012); Miss. Comm’n on Judicial Performance v. Dearman, 66 So.3d 112 (Miss. 2011); Miss. Comm’n on Judicial Performance v. Roberts, 952 So.2d 934 (Miss. 2007); Miss. Comm’n on Judicial Performance v. Willard, 788 So.2d 736 (Miss. 2001). Judge Roberts testified that he read Herring’s complaint in court and that he, at the least, prompted her to amend her complaint, knowing that the defendant was not present, and while charged with knowledge of the Uniform Justice Court Rules. It should have been clear to him given prior caselaw that doing so was misconduct.
c. Magnitude of Offense and Harm Suffered
¶ 34. Judge Roberts’s actions unquestionably result from an utter failure to apply fundamental tenets of law. However, the offense does not involve fraud or generally egregious or outrageous conduct.
¶ 35. Gastineau was irreparably harmed by Judge Roberts’s actions. On a $546.50 complaint, she was forced to pay $3,994.71, and she now presumably has an eviction on her record. Gastineau testified that she has an eight-year-old son with a rare disease who was in and out of the hospital during the time her paycheck was garnished. Because of the judgment and garnishment, she lost her ear, got behind on her other bills, and had to file bankruptcy.

*950
d. Pattern of Conduct

'¶ 36. The Commission admits that Judge Roberts’s prior complaints do not address similar issues. This appears to be an isolated incident.

e. Willful Conduct, Conduct Intended to Deprive the Public of Assets, or Conduct Exploiting the Judge’s Position

¶ 37. Judge Roberts’s conduct did not deprive the public of assets, nor was it intended to do so. Nor did his conduct appear to be exploiting his position. However, reading a clear and unmistakable document aloud in court, then claiming to believe that the document is something entirely different is, at the least, ’ extreme negligence that m'ay amount to willful conduct.

f Mitigating or Aggravating Factors

¶ 38. Judge Roberts’s failure to acknowledge any wrongdoing is an aggravating factor. Miss. Comm’n on Judicial Performance v. Littlejohn, 172 So.3d 1157, 1162 (Miss. 2015). Furthermore, Judge Roberts attempted to lay blame on others for his conduct, which is also an aggravating factor. Miss. Comm’n on Judicial Performance v. Thompson, 169 So.3d 857, 874 (Miss. 2015) (Aggravating factors were that “Judge Thompson attempted to ‘pass the buck’ to others and claimed that it was another person’s responsibility to have explained to him what to do as judge in either justice court or drug court, and that he had done nothing wrong in failing to be knowledgeable of the,law or procedures he was implementing. Throughout the entire process with the Commission, . Judge Thompson has failed to accept any responsibility for the failures that occurred ....”). Judge Roberts attempted to lay blame on the clerk’s office, claiming that it had been using the wrong form on eviction matters in general, so he believed this was also an eviction matter on the wrong form, .despite the fact that he read the complaint and the substance of -it had nothing to do with eviction. He also tried to lay blame on Herring, in that- it was her motion on which he erred.
CONCLUSION
¶ 39., Based on the above factors, particularly with regard to the monetary harm done to Gastineau and the failure to accept responsibility, we find the Commission’s recommended sanctions of a public reprimand, a $3,000 fine, and costs of the proceeding in the amount of $2,381.34 are appropriate.
¶40. After a review of the record, we disagree with the Commission’s finding of misconduct for Judge Roberts’s failure to renotice Gastineau, but we agree with the remainder of its findings of misconduct. We impose a public reprimand, a $3,000 fine, and the costs of the proceedings in the amount of $2,381.34,
¶ 41. The public reprimand shall be read in open court by the presiding judge of the Circuit Court - of Montgomery County on the first day of the next term of that Court in which a jury venire is present after the issuance of the Court’s mandate in this case, with Judge Roberts in attendance.
¶ 42. The Clerk of this Court shall send copies of this opinion and the mandate of this Court to the Chancery Clerk of Montgomery County, the Circuit Clerk of Montgomery County, the Montgomery County Justice Court Clerk, the County Administrator of Montgomery County, and the Montgomery County Board of Supervisors.
¶ 43. MONTGOMERY COUNTY JUSTICE COURT JUDGE KEITH STOKES ROBERTS SHALL BE PUBLICLY REPRIMANDED, FINED $3,000, AND ASSESSED COSTS OF $2,381.34, THE PUBLIC REPRIMAND SHALL BE *951 READ IN OPEN COURT BY. THE PRESIDING JUDGE OF THE MONTGOMERY COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VENIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE ROBERTS IN ATTENDANCE.'
WALLER, C.J., RANDOLPH, P.J., AND KITCHENS, J., CONCUR. MAXWELL, J„ CONCURS IN PART AND IN RESULT WITHOUT ' SEPARATE WRITTEN OPINION. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN AND BEAM, JJ.; MAXWELL, J., JOINS IN PART. CHAMBERLIN, J., NOT PARTICIPATING.

. At the formal hearing before the Commission, Gastineau testified that she spoke to a clerk at the court and was told she did not want to contest the claim. She further stated that she chose not to appear because she did not want to take off from work or contest the claim.

. Later in his testimony, Judge Roberts attempted to backtrack on this testimony and said that "Ms. Herring, in fact, started talking and made a motion on her own.” Either way, he recognized that a motion had to be,made to change this complaint to an eviction, supporting the notion that he knew that he was not adjudicating an eviction claim.

.The top of the order is typewritten and states the “character of suit” and notes the "court cost,” "bad check,” "late fee,” and "service charge."

. In addition to the violations of Rule 2.12, proper eviction procedures were not followed in this case.

. The record contains no basis for the $3,500 judgment ordered, and Herring admitted that *946 she did not itemize any damages or give Judge Roberts any. specific number.

. In so holding, we do not single out justice court judges, as the dissent alleges. Rather, we hold them to the standard to which we hold other judges, regardless of their background or lack of legal training. A flagrant disregard for the law by someone charged with its-knowledge goes beyond a simple re--versible error. As this Court has stated:
.There are good reasons .why our justice, court -judges must regard scrupulously, the nature of their office!' In the first place, most of our citizens have their primary, if not their only, direct contact with the law through the office. of the justice court judge.... The perception of justice of most of our citizens is forged out of their experiences with our justice court judges. If these judges do not behave with judicial temperament and perform their duties according to the law and by references to the process of adjudication, there seems little, hope that our citizenry at large may understand and respect the legal process.
Some say this is unrealistic, that our Justice Court- Judges for the most part have no formal training in the law. -No doubt these public servants are at a: disadvantage. The people have insisted only that each shall be a “high school graduate or have a general equivalency diploma." Miss. Const. Art. 6, § 171 (1890), as amended. Yet the time is at hand when we insist that our justice court judges be nothing less than just that-judges.
When a person assumes the office of Justice Court Judge in this state, he or she accepts the responsibility of becoming learned in the láw. When such a person takes the oath of office, he or she yields the prerogative of executing the responsibilities of the office on any basis other than the fair and impartial and competent application of the law to the facts. The preservation of the rule of law as our last best hope for the just ordering of our society requires nothing less than an insistence by this Court that our justice court judges be in fact what they are in name: judges.
In re Bailey, 541 So.2d 1036, 1039 (Miss. 1989).

. The issue of not renoticing Gastineau was only one of several acts of misconduct found by the Commission. The crux of the matter is that Judge Roberts blatantly violated the law and irreparably harmed Gastineau. Removing the charge of misconduct for failure to renot-ice Gastineau does not’significantly alter any of the six factors that will be discussed infra.